352 So.2d 1130 (1977)
Anne C. HINRICHS
v.
TRANQUILAIRE HOSPITAL, Robert E. Cole, Mobile Psychiatric Services, a corporation, et al., jointly and severally.
SC 2548.
Supreme Court of Alabama.
December 16, 1977.
Douglas Inge Johnstone, Mobile, for appellant.
Thomas M. Galloway, of Collins, Galloway & Smith, Mobile, for appellees.
PER CURIAM.
This appeal by an employee from grant of summary judgment in favor of the employer raises the question as to whether an employee can maintain an action in tort for her dismissal from her employment contract, which was terminable "at will," based on her claim that the dismissal was "wrongful." We hold that she cannot and affirm.
*1131 Appellant, Anne C. Hinrichs, entered an employment relationship with appellee, Mobile Psychiatric Services. The employment contract was both oral and terminable at the will of either party.
Hinrichs alleges that, during the course of this employment, she was ordered to falsify certain medical records. After performing this task for some time, she informed Robert E. Cole, her supervisor and a named defendant, that she intended to discontinue this practice. Thereafter, Cole allegedly transferred Hinrichs to a lesser employment position and eventually terminated her employment on April 8, 1976.
Hinrichs seeks damages in tort based upon the wrongful termination of her employment contract. Mobile Psychiatric contends that there is no tort of this type, and that the creation of one would open a floodgate of litigation. The possible inundation of suits is, of course, no reason to prevent the redress of a legal wrong. The sole issue, then, is whether "public policy" demands recognition of the cause of action in tort, as alleged.
It is well settled that an employment contract at will may be terminated by either party with or without cause or justification. 56 C.J.S. Master & Servant § 31; and 62 A.L.R.3d 271. Hinrichs, however, contends that the absoluteness of this rule has been increasingly circumscribed when such discharge contravenes a statute or is contrary to "public policy," citing Petermann v. International Brotherhood of Teamsters, 174 Cal.App.2d 184, 344 P.2d 25 (1959), and Nees v. Hocks, 272 Or. 210, 536 P.2d 512 (1975).
We reject this contention and affirm the grant of summary judgment for three reasons:
(1) Such a new rule as Hinrichs espouses would abrogate the inherent right of contract between employer and employee; (2) such a rule would overrule existing Alabama law; (3) the suggested foundation for such rule, "contrary to public policy," is too nebulous a standard to justify its adoption. We amplify on these reasons in the ensuing three paragraphs.
(1) The general rule is that an employment contract at will may be terminated by either party with or without cause or justification. 56 C.J.S. Master and Servant § 31; and 62 A.L.R.3d 271. This means a good reason, a wrong reason, or no reason.
(2) Alabama has followed the general rule which is that in a contract of employment "at will," the contract means what it says, that it is at the will of either party. The employee can quit at will; the employer can terminate at will. Alabama Mills, Inc. v. Smith, 237 Ala. 296, 186 So. 699 (1939). This is true whether the discharge by the employer was malicious or done for other improper reasons. Comerford v. International Harvester Co., 235 Ala. 376, 178 So. 894 (1938). This has been the Alabama law since the early years of this century. See Tennessee Coal, Iron and R. Co. v. Kelly, 163 Ala. 348, 50 So. 1008 (1909), where this Court held:
". . .If one does an act which is legal in itself and violates no right of another, the fact that this rightful act is done from bad motives or with bad intent toward the person so injured thereby does not give the latter a right of action against the former."
We pretermit any discussion of this issue in the constitutional context since it is not raised.
(3) Appellant Hinrichs would have this Court justify the creation of this rule on "public policy" grounds and bases her contention on an Oregon and a California appellate court decision. However, even the California appellate court in Petermann v. International Brotherhood of Teamsters, 174 Cal.App.2d 184, 344 P.2d 25 (1959), confessed that, "`The term "public policy" is inherently not subject to precise definition.
. . . "Public policy is a vague expression, and few cases can arise in which its application may not be disputed. . ."`" We hold that this is too vague a concept to justify the creation of such a new tort. Such creations are best left to the legislature.
*1132 In sum, because we think employment contracts "at will" mean what they say, and because adoption of such a rule would overrule nearly 70 years of existing Alabama case law, and because the suggested basis of "public policy" is too nebulous an underpinning to justify adoption of such a rule, we affirm.
AFFIRMED.
TORBERT, C. J., and BLOODWORTH, MADDOX, FAULKNER, ALMON, and BEATTY, JJ., concur.
JONES, SHORES, and EMBRY, JJ., dissent.
JONES, Justice (dissenting):
Respectfully, I dissent.
In permitting a cause of action for termination of a contract of employment at will, the Michigan Court of Appeals, in Sventko v. Kroger Co., 69 Mich.App. 644, 646, 245 N.W.2d 151, 153 (1976), said:
"[W]hile it is generally true that either party may terminate an employment at will for any reason or for no reason, that rule is not absolute. It is too well-settled to require citation that an employer at will may not suddenly terminate the employment of persons because of their sex, race, or religion. Likewise, the better view is that an employer at will is not free to discharge an employee when the reason for the discharge is an intention on the part of the employer to contravene the public policy of this state."
See also Fellows v. Medford Corp., 431 F.Supp. 199 (D.Or.1977), and Petermann v. International Brotherhood of Teamsters, 174 Cal.App.2d 184, 344 P.2d 25 (1959). For an erudite, in-depth discussion of the "termination of employment at will" problem, see Blades, Employment at Will v. Individual Freedom, 67 Col.L.Rev. 1404 (1967).
Under the foregoing definition, I would hold that the exception to the general rulecreated to comply with public policyis applicable. The need for accuracy and integrity in hospital records is manifest, for it is from these records that decisions concerning the life and health of patients are made, statements of charges for medical services are rendered, and grants of public funds are authorized. To deny the remedy here sought would permit grave violations of public policy without substantial legal sanction.
Redress for wrongful discharge under these circumstances, and thus the assurance that such wrong is not without a remedy, would place the employee in a far better position to withstand oppression at the hands of his employer. Moreover, by providing a remedy to such discharged employee, there is less likelihood that the employer's improper or overreaching demandsviolative of public policywould ever manifest itself.
For these reasons, I would hold that the termination of an employment contract at will, by the employer, is wrongful and tortious in nature when, as here, such termination, both in its motivation and practical effect, is contrary to public policy. Absent the breach of public policy, however, this rule does not interfere with the employer's normal exercise of his right to discharge, with or without cause, which is implicit in an employment contract at will. As Professor Blades concludes:
"It should be emphasized that so to limit the employer's right of discharge would not give blanket protection to the employee's interest in job security. There is a distinction between the right to employment and the right of the employee not to be obliged to his employer in ways bearing no legitimate connection to the employment." 67 Col.L.Rev., at 1414.
The majority opinion rejects this public policy basis because it "is too nebulous an underpinning to justify adoption of such a rule." This "too nebulous" thesis is groundless, in my opinion, for the reason that the law is fully capable of setting a sufficiently definitive standard in its application of the public policy concept. It is not every claim of such violation that should be actionable. Indeed, I would limit such claims to those acts cognizable as a crime or to conduct so morally reprehensible as to be commonly recognized as offensive to the public good.
*1133 Moreover, the law is not unaccustomed to dealing with the "public policy" concept in both its definition and application. For example, contracts otherwise legally binding will be totally voided where its terms contravene public policy. Tuscaloosa Ice Manufacturing Company v. Williams, 127 Ala. 110, 28 So. 669 (1900).
"The true test . . . is whether the public interest is injuriously affected in such substantial manner that private rights and interests should yield to those of the public." Maddox v. Fuller, 233 Ala. 662, 667, 173 So. 12, 16 (1937).
See also Colston v. Gulf States Paper Corp., 291 Ala. 423, 282 So. 251 (1973).
SHORES and EMBRY, JJ., concur.