459 So.2d 814 (1984)
Huey MEEKS
v.
OPP COTTON MILLS, INC. et al.
82-1288.
Supreme Court of Alabama.
September 7, 1984.
Rehearing Denied November 9, 1984.
Frank J. Tipler, Jr. of Tipler & Fuller, Andalusia, and James Harvey Tipler of Tipler & Tipler, Malibu, Cal., for appellant.
W. Michael Atchison, J. Bentley Owens III, of Starnes & Atchison, Birmingham, and J.M. Albritton of Albrittons & Givhan, Andalusia, for appellees.
Rodney A. Max, of Denaburg, Schoel, Meyerson, Ogle, Zarzaur & Max, Birmingham, for amicus curiae Alabama Trial Lawyers Assn.
Alan C. Livingston, Dothan, for amicus curiae Alabama Defense Lawyers Ass'n.
PER CURIAM.
Plaintiff, Huey Meeks, requests this Court to change the employee-at-will doctrine and allow him to sue his former employer for dismissing him because he filed a workmen's compensation claim. The trial court granted defendant's motion to dismiss.
This Court on numerous recent occasions has declined to modify the employee-at-will doctrine. Kitsos v. Mobile Gas Service Corp., 431 So.2d 1150 (Ala. 1983); Meredith v. C.E. Walther, Inc., 422 So.2d 761 (Ala.1982); Bender Ship Repair, Inc. v. Stevens, 379 So.2d 594 (Ala.1980); Martin v. Tapley, 360 So.2d 708 (Ala.1978); Hinrichs v. Tranquilaire Hospital, 352 So.2d 1130 (Ala.1977). We note that after the decision in Bender Ship Repair, the legislature passed the law codified at Code 1975, § 12-16-8.1 (1983 Supp.), which prohibits an employer from discharging an employee for serving on a jury and provides an employee so discharged with an action for damages.
Nothing in the record before us persuades us to deviate from the steadfastly followed rule that an employee at will may be discharged for no reason or any reason, including a "wrong" reason. The judgment of the trial court dismissing the complaint is affirmed.
AFFIRMED.
TORBERT, C.J., and MADDOX, ALMON and EMBRY, JJ., concur.
SHORES, J., concurs specially.
*815 BEATTY, J., dissents with opinion, in which FAULKNER, JONES, and ADAMS, JJ., concur.
SHORES, Justice (concurring specially):
My dissenting brothers emphasize that Hinrichs v. Tranquilaire Hospital, 352 So.2d 1130 (Ala.1977), was decided "almost seven years ago", and they say, "It is time for this Court to reevaluate the position it took there." I ask, why? The Court refused to change the rule in Hinrichs, although three members of the Court, including this writer, implored the Court to make a public policy exception to the "at will" rule, under facts that were as compelling as those presented here, if not more so.
Hinrichs was decided in 1977 and reaffirmed a seventy-year-old rule. The Court was asked to change the rule again and refused to do so in the following years:
1979 Bierley v. American Cast Iron Pipe Co. 374 So.2d 1341

Newby v. City of Andalusia 376 So.2d 1374
1980 Bender Ship Repair, Inc. v. Stevens 379 So.2d 594

Carver v. Metrobank, 386 So.2d 737
1981 Tripp v. Hall, 395 So.2d 33

Davis v. Marshall, 404 So.2d 642
1982 Meredith v. C.E. Walther, Inc. 422 So.2d 761
1983 Kitsos v. Mobile Gas Service Corp. 431 So.2d 1150
Thus, the Court has refused to change the rule in almost every year since it was reaffirmed in Hinrichs, and each member of the Court has joined in those decisions, including the three dissenters in Hinrichs. Why, then, is this the opportune time for the Court to change the rule? I continue to believe that the rule is harsh in some of its applications, as indicated by my dissent in Hinrichs, and I agree that a more equitable rule could be formulated. But I also believe that stability in the law is more desirable in some instances than equity. The only reason offered for changing the rule in 1984 is exactly the same reason that was rejected in each of the preceding years listed above by a majority of this Court.
We left it to the legislature to change the harshness of the rule announced in Bender, and that was the case where the judiciary should have been vitally concerned, where the employee was discharged for serving on the grand jury. Why then should we not leave it to the legislature to change the rule in this case, where the employee was discharged allegedly for seeking workmen's compensation benefits, a legislatively created right? Or, should we hold, as my dissenting brothers seem to suggest, that the Court will fashion a rule to avoid the harshness when a legislative right is involved, but leave it to the legislature to fashion a remedy where judicial functions are involved?
For these reasons, I join the majority.
BEATTY, Justice (dissenting):
The facts in this case should compel this Court to recognize a narrow public policy exception to the employment-at-will rule and allow the plaintiff to proceed with his action against his former employer.
The employment-at-will rule provides that, unless the employment contract sets a specific term or states otherwise, an employment contract is "at will" and may be terminated by either the employer or the employee "with or without cause or justification. This means a good reason, a wrong reason, or no reason." Hinrichs v. Tranquilaire Hospital, 352 So.2d 1130, 1131 (Ala.1977). The rule was widely adopted by the American courts in the late nineteenth and early twentieth centuries, at the same time that the philosophy of laissez faire and the freedom-of-contract ideology were gaining acceptance. See generally, Note, Protecting Employees At Will Against Wrongful Discharge: The Public Policy Exception, 96 Harv.L.Rev. 1931 (1983). On its face, the rule applies equally to employers and employees. As a practical matter, however, it weighs heavily in favor of the employer and it is easy to see why it "was ideally suited to an economy that was rapidly industrializing." Id. at 1933.
*816 As society and the business environment change, however, more and more courts are modifying or recognizing exceptions to the employment-at-will rule. The United States Court of Appeals for the Third Circuit last year noted that "[a]lready 29 states have granted some form of common law exceptions to the [employment-]at-will doctrine; in addition, the courts of five other states as well as the District of Columbia have indicated their willingness to do so." Novosel v. Nationwide Ins. Co., 721 F.2d 894 (3d Cir.1983). "The most widely accepted limitation on the rule of at-will employment has been the `public policy exception,' under which an employee may recover damages from her employer if she is fired for reasons that undermine an important public policy." Note, 96 Harv.L. Rev. at 1931-32.
The employment-at-will doctrine was first adopted in this state in 1891 in Howard v. East Tennessee, V. & G. Ry., 91 Ala. 268, 8 So. 868 (1891). Since that time it has acquired a stranglehold on this Court. In case after case, we have denied any cause of action based on wrongful discharge, blindly applying the rule without questioning its limitations or its validity in today's society. Admittedly, the rule does provide a means of easy disposition. However, neither this nor the fact that we might "overrule nearly [100] years of existing Alabama case law," Hinrichs, 352 So.2d at 1132, is sufficient reason to continue our blind adherence to an anachronistic rule without a thorough reevaluation of that rule.
To be sure, we did note in Hinrichs that the plaintiff sought the adoption of a public policy exception. However, we declined to recognize the exception, stating that "`contrary to public policy' is too nebulous a standard to justify its adoption." 352 So.2d at 1131. Clearly, the modern trend is to adopt this exception. Other courts are obviously finding "contrary to public policy" a workable standard. We decided Hinrichs almost seven years ago. It is time for this Court to reevaluate the position it took there.
The employment-at-will rule is not set indelibly in stone. It is a part of the common law, judicially created, and within the power of judicial reform. See, Lloyd v. Service Corp. of Alabama, 453 So.2d 735 (Ala.1984). Thus, there is no reason to treat it as though it has the strength of legislation. As Justice Faulkner recently pointed out in Buchanan v. Merger Enterprises, Inc., [August 24, 1984] ___ So.2d ___ (Ala.1984):
"`Inherent in the common law is a dynamic principle which allows it to grow and to tailor itself to meet changing needs within the doctrine of stare decisis, which, if correctly understood, was not static and did not forever prevent the courts from reversing themselves or from applying principles of common law to new situations as the need arose. If this were not so, we must succumb to a rule that a judge should let others `long dead and unaware of the problems of the age in which he lives, do his thinking for him.' ..."
Quoting Lewis v. Wolf, 122 Ariz. 567, 568, 596 P.2d 705, 706 (1979).
Recently, a majority of this Court has twice modified common law principles. In Lloyd, supra, we held that where
"a lessee can show that an exculpatory provision in a residential lease contract is in fact an unconscionable one, due to a prodigious amount of bargaining power on behalf of the lessor, which is used to the lessor's advantage, causing a great hardship and risk to the lessee, the contract provisions, or the contract as a whole, if not separable, is void on the grounds that the provision is contrary to public policy." (Emphasis added.)
In Buchanan, supra, we recognized a tort action against an establishment that sells liquor to an obviously intoxicated person when that person, upon leaving the establishment, causes the death of someone else. Both of these cases departed from the existing common law of this state, but the results were firmly grounded on the dictates of public policy. The employment-at-will *817 rule is yet another area in which there is a great need for judicial reform.
The present case involves an employee who was discharged for merely filing a workmen's compensation claim expressly authorized by legislative act! See also, Martin v. Tapley, 360 So.2d 708 (Ala.1978). In five cases directly on point, "courts have recognized tort action for wrongful discharge of an employee in retaliation for his filing of a workmen's compensation claim, a reason which constituted a violation of public policy." Leach v. Lauhoff Grain Co., 51 Ill.App.3d 1022, 9 Ill.Dec. 634, 637, 366 N.E.2d 1145, 1148 (1977); Frampton v. Central Indiana Gas Co., 260 Ind. 249, 297 N.E.2d 425 (1973); Murphy v. City of Topeka-Shawnee County Dept. of Labor Services, 6 Kan.App.2d 488, 630 P.2d 186 (1981); Sventko v. Kroger Co., 69 Mich. App. 644, 245 N.W.2d 151 (1976); Shanholtz v. Monongahela Power Co., 270 S.E.2d 178 (W.Va.1980). See also Kelsay v. Motorola, Inc., 74 Ill.2d 172, 23 Ill.Dec. 559, 384 N.E.2d 353 (1978); Lally v. Copygraphics, 85 N.J. 668, 428 A.2d 1317 (1981); Brown v. Transcon Lines, 284 Or. 597, 588 P.2d 1087 (1978). In each case, the court looked to the purpose and goals of the state's workmen's compensation statutes and found that there existed a "strong public policy to provide financial and medical benefits to the victims of work-related injuries." Leach, 9 Ill.Dec. at 637, 366 N.E.2d at 1148.
The Sventko court noted:
"Discouraging the fulfillment of the legislative policy by use of the most powerful weapon at the disposal of the employer, termination of employment, is obviously against the public policy of our state. Justice T.E. Brennan, dissenting in Whetro [v. Awkerman, 383 Mich. 235], said at 249, 174 N.W.2d [783] at 787:
"`The function of the workmen's compensation act is to place the financial burden of industrial injuries upon the industries themselves, and spread that cost ultimately among the consumers.
"`This humane legislation was developed because the industrialization of our civilization had left in its wake a trail of broken bodies.
"`Employers were absolved from general liability for negligence, in exchange for the imposition of more certain liability under the act.'
"The trail of broken bodies endures and increases with time. Employers who find themselves located on that trail are eager to take advantage of the freedom from general liability provided by the act. An employer cannot accept that benefit for himself and yet attempt to prevent the application of the act to the work-related injuries of his employees without acting in direct contravention of public policy. This Court cannot tolerate such conduct." 245 N.W.2d at 153-154.
Our workmen's compensation statutes have much the same purpose as the statutory schemes in the cases cited above. I would adopt the reasoning of those courts and grant Meeks an opportunity to present his case.
This position is supported by Martin v. Republic Steel Co., 226 Ala. 209, 146 So. 276 (1933), in which this Court held that a clause in an employment contract wherein the employee agreed to hold the employer harmless for injuries sustained could not "shield the [employer] from liability" under the workmen's compensation statutes. 226 Ala. at 212, 146 So. 276. In other words, the employer may not, by the terms of the employment contract, deny the employee his statutory right to file a claim for workmen's compensation. This holding was obviously based on public policy considerations. The public policy of this state being to provide compensation to injured employees, employers may not subvert this policy by private contract. Extending this principle to the present situation, this Court should hold that the employment at will rule may not be used to subvert an employee's right to file a claim under the workmen's compensation statutes. Whatever might be said of the general right to fire at will, the employer cannot exercise that prerogative *818 so as to needlessly chill the employee's exercise of his statutory right to compensation.
The employment-at-will rule has already been abrogated to some extent by a majority of this Court in Ex parte Kimberly-Clark Corp., 449 So.2d 794 (Ala.1983). In that case, the plaintiff brought a malicious prosecution suit against his former employer. The majority stated that an employer has an absolute right to terminate an employee at will for any reason, but then went on to allow the plaintiff to recover lost wages as damages. Both the majority opinion and the special concurrence justified this decision on the basis that the plaintiff/employee had brought a malicious prosecution action. However, the end result was to allow "the employee at will to recover wages which the employee clearly could not have earned simply because he had been discharged by an employer who had the legal right to terminate his employment for any reason." 449 So.2d at 796 (Beatty, J., dissenting).
Having held in Kimberly-Clark that a plaintiff can recover lost wages that he would not, under the employment-at-will rule be entitled to, this Court should go further and allow a cause of action for wrongful discharge in violation of public policy. To refuse to do so allows only those employees who were discharged, criminally prosecuted by their former employers, and acquitted to recover lost wages.
I am not advocating the abolition of the employment-at-will doctrine; I am merely urging the adoption of a narrow public policy exception to that rule. As the Leach court noted, this would "not abrogate the employer's right to discharge employees at will without cause in cases where no clear mandate of public policy is involved." 9 Ill.Dec. at 637, 366 N.E.2d at 1148.
For the reasons stated above, I respectfully dissent.
FAULKNER, JONES and ADAMS, JJ., concur.