This is an action for breach of contract and intentional interference with business or contractual relations. The trial judge entered summary judgment on all counts and the plaintiff appeals.
The plaintiff, Percy Bosarge, was an agent for an insurance company, Bankers Life Company, and had worked in the Bayou La Batre area for approximately six years. His contract with Bankers Life was terminated when he recommended to one of his clients that he replace his Bankers Life coverage with the insurance coverage offered by American General. Bosarge claims that, following his termination, the agency manager of Bankers Life, Philip L. Ward, sent a Bankers Life representative to all of Bosarge's Bankers Life clients to tell those clients that Bosarge was no longer in the insurance business and that an "agent of record" form had to be signed by them in order for them to maintain their insurance. These statements, Bosarge maintains, were false. Bosarge claims that he could have remained as the agent of record, which would have entitled him to renewal fees and service fees. Furthermore, Bosarge contends that computerized forms were sent to his clients notifying them that he was no longer a full-time associate of Bankers Life. It is also alleged that in one instance Bankers Life notified a client that Bosarge was no longer licensed as an agent for Bankers Life, now known as Principal Mutual Life Insurance Company. Bosarge, however, contends that he maintained his license as a broker with the company during that time.
It is Bosarge's contention that the actions of Bankers Life constituted intentional interference with business relations. In addition, he argues that Bankers Life breached its contract with him. We disagree with both contentions, for the following reasons.
First, we will address whether the trial court erred in entering summary judgment on Bosarge's breach of contract claim. We note initially that Bosarge's contract contained an employment-at-will clause, which stated as follows: "[W]e or you can terminate this contract at any time." Bosarge relies onHarrell v. Reynolds Metals Co., 495 So.2d 1381 (Ala. 1986), wherein this Court stated that "[a]n employee at will cannot be wrongfully terminated unless such termination is for a reason which contravenes public policy." Id. at 1387. Bosarge contends that he was terminated "for the purpose of preempting [his] ability to provide insurance products from various sources to clients." This, he argues, contravenes public policy. We disagree, not only with Bosarge's argument that such conduct is against public policy, but also with his reliance on our statement *Page 501 
from Harrell, supra. In Hoffman-LaRoche, Inc. v. Campbell,512 So.2d 725 (Ala. 1987), we stated:
 "By now, the rule is well settled in Alabama that an employee contract at will may be terminated by either party with or without cause or justification. See, e.g., Meeks v. Opp Cotton Mills, Inc., 459 So.2d 814 (Ala. 1984); Hinrichs v. Tranquilaire Hospital, 352 So.2d 1130 (Ala. 1977). This means a good reason, a wrong reason, or no reason. Hinrichs, supra.
 "The cases reveal that three elements must be shown to establish that an employment contract is one other than one terminable at will: (1) that there was a clear and unequivocal offer of lifetime employment or employment of definite duration, Bates v. Jim Walter Resources, Inc., 418 So.2d 903 (Ala. 1982); (2) that the hiring agent had authority to bind the principal to a permanent employment contract, Alabama Mills, Inc. v. Smith, 237 Ala. 296, 186 So. 699 (1939); and (3) that the employee provided substantial consideration for the contract separate from the services to be rendered, United Security Life Ins. Co. v. Gregory, 281 Ala. 264, 201 So.2d 853 (1967). This Court has repeatedly refused to modify this doctrine even so much as to recognize a so-called public policy exception to its application. Thus, we have refused to recognize an exception where an employee had been dismissed for refusing to commit a criminal act, see, e.g., Jones v. Ethridge, 497 So.2d 1107
(Ala. 1986); Williams v. Killough, 474 So.2d 680
(Ala. 1985), or where an employee had been dismissed because he filed a workmen's compensation claim, see Meeks v. Opp Cotton Mills, Inc., supra, or where an employee had been dismissed because he responded to a subpoena for jury duty, see Bender Ship Repair, Inc. v. Stevens, 379 So.2d 594 (Ala. 1980).[1]
Id. at 728. The trial court, therefore, did not err in entering summary judgment on Bosarge's claim for breach of contract.
We will now consider whether the trial court erred in entering summary judgment on Bosarge's claim for intentional interference with business relations. At the outset, we are of the opinion that some of the alleged interference by Banker's Life was, without question, within the realm of its authority. Bosarge cannot complain because Bankers Life notified his clients that he was no longer a full-time associate of Bankers Life. That was obviously a truthful notification, because Bosarge had been terminated as an agent for Bankers Life. In addition, Bosarge complains that Bankers Life "conveniently enclosed an agent of record form" in order for clients to authorize servicing of their accounts by another agent. Naturally, Bankers Life would want to provide their clients with the opportunity to use a full-time Bankers Life agent to service its accounts. It is probable that Bankers Life was concerned that Bosarge would continue to have clients switch to other insurance companies and, therefore, that it set out to protect its interests.
We are left to consider Bosarge's allegations that Bankers Life overstepped its boundaries by informing clients that Bosarge was no longer in the insurance business and by informing them that signing the agent of record forms would be necessary in order to maintain coverage. In his deposition, Bosarge gave this testimony:
 "Q. Does Defendant's Exhibit 13, this letter you produced, anywhere say that you were no longer in the insurance business?
"A. You're asking me? *Page 502 
 "Q. I'm asking you to read that letter and tell me, does it say you're no longer in the insurance business[?].
"A. Point blank?
"Q. Right
 "A. No, it does not. It says I'm no longer a full-time associate of the Principal Financial Group.
 "Q. So it doesn't say you are no longer selling insurance; it says you are no longer selling it for Principal Mutual.
"A. It doesn't even say that.
"Q. Okay. It says you are no longer an agent.
"A. No, it doesn't say that either.
"Q. Okay. What does it say?
"A. It says I'm no longer full-time.
 "Q. Okay. But my point is, it does not say you are no longer in the insurance business.
 "A. To me it doesn't, no. But to my clients, it did."
This obviously does not constitute "substantial evidence," which is now required in Alabama in order to defeat summary judgment. See Bass v. SouthTrust Bank of Baldwin County,538 So.2d 794 (Ala. 1989), for an explanation of the substantial evidence rule and how it differs from the former "scintilla rule." Furthermore, there was shown no substantial evidence that anyone from Bankers Life informed clients that their coverage would not be maintained unless they signed an "agent of record" form changing from Bosarge to another agent. The actions of Bankers Life, at most, indicate competition between Bankers Life and Bosarge for clients.
Therefore, we are of the opinion that the elements of tortious interference with business relations found inGross v. Lowder Realty Better Homes Gardens, 494 So.2d 590
(Ala. 1986),* have not been made out sufficiently to require a reversal of the summary judgment. That judgment is due to be, and it hereby is, affirmed.
AFFIRMED.
HORNSBY, C.J., and MADDOX, ALMON and STEAGALL, JJ., concur.
[1] "Both Meeks and Bender Ship Repair have been effectively abrogated by the legislature's adoption of statutory rules to the contrary. See Code of 1975, § 12-16-8.1, which overruledBender Ship Repair and Code of 1975, § 25-5-11.1, which overruled Meeks. We especially note that this Court's decisionin Harrell v. Reynolds Metals Co., 495 So.2d 1381 (Ala. 1986),although it discusses public policy, should not be read asrecognizing a public policy exception. Indeed, the cases citedin this case decided after Harrell indicate that it cannot beso read." (Emphasis added.)
* "(1) The existence of a contract or business relation; (2) Defendant's knowledge of the contract or business relation; (3) Intentional interference by the defendant with the contract or business relation; (4) Absence of justification for the defendant's interference; and (5) Damage to the plaintiff as a result of defendant's interference."
494 So.2d at 597.