561 So.2d 1050 (1990)
Betty SALTER
v.
ALFA INSURANCE COMPANY, INC.
88-1497.
Supreme Court of Alabama.
April 12, 1990.
*1051 Allen G. Woodard of Cherry & Givens, Dothan, for appellant.
William C. Carn III and Connie Ray Stockham of Lee & McInish, Dothan, for appellee.
HOUSTON, Justice.
After Betty Salter's agent's contract was terminated by Alfa Insurance Company, Inc. ("Alfa"), she sued Alfa, claiming that the contract had been wrongfully terminated and that she had been defrauded. The trial court entered a summary judgment for Alfa on both claims,[1] and certified it as final pursuant to Rule 54(b), Ala.R.Civ.P.[2] Salter appealed. We affirm.
Initially, we note that the summary judgment was appropriate in this case if there was no genuine issue of material fact and Alfa was entitled to a judgment as a matter of law. In determining whether there was a genuine issue of material fact, this Court must review the evidence in the light most favorable to Salter and resolve all reasonable doubts against Alfa. Kizziah v. Golden Rule Insurance Co., 536 So.2d 943 (Ala.1988). This action was pending on June 11, 1987; therefore, the applicable standard of review is the "scintilla of evidence rule." Ala.Code 1975, § 12-21-12.
Salter argues that the trial court erred in entering the summary judgment on her wrongful termination claim on the ground that her employment contract with Alfa was terminable at will. We disagree.
Salter alleged that Alfa's termination of her contract was wrongful because it was based upon a finding by Alfa that she had not cooperated in the investigation of a life insurance claim that had been filed with Alfa in connection with the death of W.B.; Salter alleged that she had been told by a representative of Alfa that she did not have to be involved in the investigation of the W.B. claim and that she had relied upon that representation. The undisputed evidence showed that Salter had an employment contract with Alfa that was terminable at the will of either party.[3] She argues, nonetheless, that the termination of her contract was in violation of this state's public policy because, she says, the Legislature has historically treated the insurance industry "with a view to the public interest." Salter asks that we carve a public policy exception out of the rule in this state that an employment contract at will may be terminated by either party with or without cause or justification. In Hinrichs v. Tranquilaire Hospital, 352 So.2d 1130 (Ala.1977), this Court was faced with the question whether the plaintiff could maintain an action in tort for the termination of *1052 her employment contract, which was terminable "at will," based on her claim that the termination was the result of her refusal to continue to falsify medical records and, therefore, that it was "wrongful." We held that she could not, and affirmed the summary judgment entered for the defendants, stating, in pertinent part, as follows:
"It is well settled that an employment contract at will may be terminated by either party with or without cause or justification. 56 C.J.S. Master & Servant § 31; and 62 A.L.R.3d 271. Hinrichs, however, contends that the absoluteness of this rule has been increasingly circumscribed when such discharge contravenes a statute or is contrary to `public policy,' citing Petermann v. International Brotherhood of Teamsters, 174 Cal.App.2d 184, 344 P.2d 25 (1959), and Nees v. Hocks, 272 Or. 210, 536 P.2d 512 (1975).
"We reject this contention and affirm the grant of summary judgment for three reasons:
"(1) Such a new rule as Hinrichs espouses would abrogate the inherent right of contract between employer and employee; (2) such a rule would overrule existing Alabama law; (3) the suggested foundation for such rule, `contrary to public policy,' is too nebulous a standard to justify its adoption. We amplify on these reasons in the ensuing three paragraphs.
"(1) The general rule is that an employment contract at will may be terminated by either party with or without cause or justification. 56 C.J.S. Master and Servant § 31; and 62 A.L.R.3d 271. This means a good reason, a wrong reason, or no reason.
"(2) Alabama has followed the general rule which is that in a contract of employment `at will,' the contract means what it says, that it is at the will of either party. The employee can quit at will; the employer can terminate at will. Alabama Mills, Inc. v. Smith, 237 Ala. 296, 186 So. 699 (1939). This is true whether the discharge by the employer was malicious or done for other improper reasons. Comerford v. International Harvester Co., 235 Ala. 376, 178 So. 894 (1938). This has been the Alabama law since the early years of this century. See Tennessee Coal, Iron and R. Co. v. Kelly, 163 Ala. 348, 50 So. 1008 (1909), where this Court held:
"`... If one does an act which is legal in itself and violates no right of another, the fact that this rightful act is done from bad motives or with bad intent toward the person so injured thereby does not give the latter a right of action against the former.'
"We pretermit any discussion of this issue in the constitutional context since it is not raised.
"(3) Appellant Hinrichs would have this Court justify the creation of this rule on `public policy' grounds and bases her contention on an Oregon and a California appellate court decision. However, even the California appellate court in Petermann v. International Brotherhood of Teamsters, 174 Cal.App.2d 184, 344 P.2d 25 (1959), confessed that, `"The term `public policy' is inherently not subject to precise definition.... `Public policy is a vague expression, and few cases can arise in which its application may not be disputed....'"' We hold that this is too vague a concept to justify the creation of such a new tort. Such creations are best left to the legislature.
"In sum, because we think employment contracts `at will' mean what they say, and because adoption of such a rule would overrule nearly 70 years of existing Alabama case law, and because the suggested basis of `public policy' is too nebulous an underpinning to justify adoption of such a rule, we affirm."
352 So.2d at 1131-32. Recently, in Bosarge v. Bankers Life Co., 541 So.2d 499, 501 (Ala.1989), involving a suit alleging breach of contract, this Court, quoting Hoffman-LaRoche, Inc. v. Campbell, 512 So.2d 725, 728 (Ala.1987), declined to modify the employee-at-will doctrine, stating, in pertinent part, as follows:
"`By now, the rule is well settled in Alabama that an employee contract at *1053 will may be terminated by either party with or without cause or justification. See, e.g., Meeks v. Opp Cotton Mills, Inc., 459 So.2d 814 (Ala.1984); Hinrichs v. Tranquilaire Hospital, 352 So.2d 1130 (Ala.1977). This means a good reason, a wrong reason, or no reason. Hinrichs, supra.
"`... This Court has repeatedly refused to modify [the employee-at-will] doctrine even so much as to recognize a so-called public policy exception to its application. Thus, we have refused to recognize an exception where an employee had been dismissed for refusing to commit a criminal act, see, e.g., Jones v. Ethridge, 497 So.2d 1107 (Ala.1986); Williams v. Killough, 474 So.2d 680 (Ala.1985), or where an employee had been dismissed because he filed a workmen's compensation claim, see Meeks v. Opp Cotton Mills, Inc., supra, or where an employee had been dismissed because he responded to a subpoena for jury duty, see Bender Ship Repair, Inc. v. Stevens, 379 So.2d 594 (Ala.1980).'"[4]
(Some emphasis in original; some emphasis added in Bosarge.)
Again, we decline to modify the employee-at-will doctrine by recognizing a public policy exception to it in this case. The trial court did not err in entering the summary judgment on the wrongful termination claim on the ground that Salter had an employment contract that was terminable at will.
Salter next contends that the trial court erred in entering the summary judgment on her fraud claim because, she argues, there was at least a scintilla of evidence tending to prove each element of the claim. Again, we disagree.
Salter's complaint, in pertinent part, reads as follows:
"[Alfa] by and through [its] agent, servant, employee, Sandy Godwin, represented to [Salter] in 1984 that [Salter] would not be required to participate in any way in the claims process concerning the death of [W.B.].
"The representations made by [Alfa] were false, [Alfa] knew they were false and/or [Alfa], with knowledge of the true facts, recklessly misrepresented them to [Salter] with the intention that [Salter] should rely upon them.
"[Salter] believed the representations made by [Alfa] and in reliance upon them was caused to be terminated from her employment with [Alfa] thus causing her substantial financial damage because of this reliance."
The record shows that Alfa made a prima facie showing that Salter's allegations were unsubstantiated and, therefore, that it was entitled to a judgment as a matter of law. Accordingly, the burden shifted to Salter to present at least a scintilla of evidence tending to show the existence of a fact question. In an attempt to do this, Salter presented evidence tending to show that Sandy Godwin, the director of life insurance claims for Alfa, had told her that Alfa was "not going to involve [her] in the investigation [of W.B.'s death], because of the closeness that [she] had with [W.B.'s] family." The evidence also tended to show that Salter had relied on that representation by staying out of the investigation and that she had been told that Alfa terminated her contract because she did not cooperate in the investigation.
The elements of actionable fraud based on a misrepresentation are: (1) a duty to speak the truth; (2) a false representation of a material existing fact made intentionally, recklessly, or innocently; (3) action upon the false representation by the plaintiff; and (4) damages proximately resulting from the false representation. Alfa Mutual Insurance Co. v. Northington, 561 So.2d 1041 (Ala.1990).
The undisputed evidence in the present case shows that Salter suffered no injury as a result of any representation that may have been made by a representative of Alfa. Salter had an employment *1054 contract that was terminable by Alfa at any time and for any, or no, reason. Even assuming that Salter proved that Alfa, through one of its representatives, had intentionally or recklessly misrepresented to her that she did not have to participate at all in the investigation of the W.B. claim; that she had acted upon that misrepresentation; and that Alfa had based the termination of her contract on her failure to cooperate in the investigation, the fraud claim would still fail. Although we could never sanction the kind of treatment that Salter is alleged to have received from Alfa in this case, Alfa had the right under the employee-at-will doctrine to terminate Salter's contract, even if it did so maliciously or for some other improper reason.[5]
Salter also contends that the trial court's judgment must be reversed because it was entered, she says, while she had a discovery request pending. In Reeves v. Porter, 521 So.2d 963, 965 (Ala.1988), this Court addressed the propriety of entering a summary judgment while discovery is pending:
"The mere pendency of discovery does not bar summary judgment. If the trial court from the evidence before it, or the appellate court from the record, can ascertain that the matter subject to production was crucial to the non-moving party's case (Parrish v. Board of Commissioners of Alabama State Bar, 533 F.2d 942 (5th Cir.1976)) or that the answers to the interrogatories were crucial to the non-moving party's case (Noble v. McManus, 504 So.2d 248 (Ala.1987)), then it is error for the trial court to grant summary judgment before the items have been produced or the answers given. However, the burden of showing that these items are crucial is upon the non-moving party. He can do so by complying with Rule 56(f), Ala.R.Civ.P., Water View Developments, Inc. v. Eureka, Inc., 512 So.2d 916 (Ala.1987). Rule 56(f) provides: `Should it appear from the affidavits of a party opposing the motion that he cannot for reasons stated present by affidavit facts essential to justify his opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.' A pending motion to compel production (Parrish, supra) and a motion to compel answers to interrogatories, which has been granted (Noble, supra) when the evidence before the court clearly shows that the evidence sought is crucial to the non-moving party's case, have been held sufficient compliance with Rule 56(f). However, when no such crucial evidence would be supplied by the production or by the answers to the interrogatories, it is not error for the trial court to grant summary judgment with discovery pending. Wallace v. Brownell Pontiac-GMC Co., 703 F.2d 525 (11th Cir.1983); Noble v. McManus, supra. In Wallace, Judge Kravitch noted: `Most, if not all, cases involving a Rule 56(f) issue will be factually dissimilar. For this very reason, a blanket rule would be inappropriate.' 703 So.2d at 528. The burden is upon the non-moving party to comply with Rule 56(f) or to prove that the matter sought by discovery is or may be crucial to the non-moving party's case."
The record suggests that when the judgment was entered in the present case, Alfa was under a court order to produce certain documents. However, Salter has not persuaded us, and she apparently did not persuade the trial court, that these documents were or might have been crucial to her case (i.e., that their disclosure and introduction would or might have precluded the entry of the summary judgment).
For the foregoing reasons, we hold that the trial court did not err in entering the summary judgment on the wrongful termination and fraud claims.
We note at this point that there is no merit in Salter's contention that the trial *1055 court abused its discretion in denying her motion to impose sanctions on Alfa for its failure to produce requested documents. See Iverson v. Xpert Tune, Inc., 553 So.2d 82, 87 (Ala.1989).
Finally, Salter contends that the trial court erred in granting Alfa's motion for a protective order and its motion in limine. Before these motions were filed, Salter had filed a notice of intent to serve subpoenas on certain non-parties who, Salter alleged, possessed documents relating to the W.B. claim. The protective order prevented Salter from discovering the documents that related to that claim, and the motion in limine prohibited Salter from offering into evidence the substance of certain conversations that she alleged she had had with certain attorneys. Salter argues that she was denied the opportunity to discover and introduce evidence that would have supported her wrongful termination and fraud claims. After a thorough review of these motions, however, and after a careful consideration of Salter's arguments on this issue, we fail to see how the evidence that she sought to obtain and introduce would have presented a fact question precluding summary judgment on the wrongful termination and fraud claims. Therefore, we cannot hold the trial court in error for granting the motions.
AFFIRMED.
KENNEDY, J., concurs.
HORNSBY, C.J., and SHORES, J., concur specially.
JONES, J., concurs in the result.
HORNSBY, Chief Justice (concurring specially).
I concur with the majority's resolution of the issues presented by this appeal. However, because I am concerned by the Court's continued adherence to a strict interpretation of the employment-at-will rule, I concur specially. I agree that this appeal does not present facts that would justify the creation of a "public policy exception" to the employment-at-will rule. However, I believe that there is a place in our common law for a public-policy-based remedy for employees who may be subjected to "employment blackmail" for doing or not doing certain acts. It is beyond question that the employment-at-will rule allows employers to effectively pressure employees to commit wrongful or illegal acts through the threat of dismissal for not complying with the employer's demands.
Much has been written recently on the propriety of adopting a "public policy" exception to the employment-at-will rule. See, e.g., Max, A New Tort in Alabama: Wrongful Termination in Violation of Public Policy, 12 Am.J.Trial Advoc. 39 (1988); Schmidt, Development of the Public Policy Exception to the At-Will Doctrine, 29 Ariz.L.Rev. 295 (1987); Recent Decisions, Employment-At-Will/Public Policy Exception, 75 Ill.B.J. 96 (1988); Perspective, Employment At Will In Alaska: The Question Of Public Policy Torts, 6 Alaska L.Rev. 269 (1989); Note, Sterling Drug, Inc. v. Oxford: Arkansas Adopts the Public Policy Exception to the Employment-at-will Doctrine, 42 Ark.L.Rev. 187 (1989); Note, Employment-at-Will Employers May Not Discharge At-will Employees for Reasons that Violate Public PolicyWagenseller v. Scottsdale Memorial Hospital, No. 17646 (Ariz. June 17, 1985), 1986 Ariz.St.L.J. 161; Comment, Employment At Will: The Time Has Come For Alabama To Embrace Public Policy As An Exception To The Rule Of Employment At Will, 19 Cumb.L.Rev. 373 (1989); Note, Legislative Attempts to Modify the Employment At-Will Doctrine: Will the Public Policy Exception be the Next Step?, 14 J.Corp.L. 241 (1988); Comment, Employment LawTermination of Employee At-Will in Violation of Public Policy, 72 Mass.L.Rev. 45 (1987); Note, Employment at Will: Missouri Recognizes the Public Policy Exception, 52 Mo. L.Rev. 677 (1987); Recent Developments, Labor LawEmployment At WillPublic Policy Exceptions To The Employment At Will Doctrine, 53 Tenn.L.Rev. 199 (1985); Note, LaborEmployment at WillPublic Policy Exception Recognized, 11 U.Ark. Little Rock L.J. 617 (1988-89). Clearly there is considerable *1056 scholarly debate in the law regarding liberalizing the common law rule of employment at will.
Alabama, however, has clung tenaciously to the original formulation of the rule: an employee at will may be dismissed for a good reason, a bad reason, or no reason at all. Montgomery v. Big B, Inc., 460 So.2d 1286 (Ala.1984). The rule has been rigidly enforced and has been the cause of much injustice in the name of law. See, e.g., Wagenseller v. Scottsdale Memorial Hospital, 147 Ariz. 370, 710 P.2d 1025 (1985) (employee terminated for refusal to participate in indecent exposure); Meeks v. Opp Cotton Mills, 459 So.2d 814 (Ala.1984) (employee fired for having filed workmen's compensation claim); Reich v. Holiday Inn, 454 So.2d 982 (Ala.1984) (employee alleged that she was fired for refusing to pay invoices to dummy corporation set up to defraud company shareholders); Bender Ship Repair, Inc. v. Stevens, 379 So.2d 594 (Ala.1980) (employee fired for serving on grand jury and thereby missing work); Hinrichs v. Tranquilaire Hospital, 352 So.2d 1130 (Ala.1977) (employee alleged that she was terminated for refusal to falsify medical records); Petermann v. International Brotherhood of Teamsters, Local 396, 174 Cal.App.2d 184, 344 P.2d 25 (1959) (employee terminated for refusal to commit perjury).
No one would argue that the law should protect conduct by employers that would approach that which is set out above. The legislature has now sought to give protection to employees who must file workmen's compensation claims and those who are called to jury service. See, Code 1975, § 25-5-11.1 and § 12-16-8.1. The time will come when this Court must seek to protect employees from employers' fraudulent or criminal conduct despite what the employee's legal status may be.
I do not advocate an exception that would swallow up the rule of employment at will. There is still a place for that rule in our law. However, this court should not allow employers to terminate their employees for a refusal to commit a wrongful, fraudulent, or illegal act, nor should an employer be allowed to subject an employee to unreasonable or outrageous physical dangers and then terminate the employee should he refuse to work under such dangerous conditions.
There is an undeniable trend toward the adoption of a "public policy" based remedy for employees at will who are terminated for bad reasons. Though the statement of the remedy may vary, numerous courts have adopted a public policy exception. See, e.g., Novosel v. Nationwide Ins. Co., 721 F.2d 894 (3d Cir.1983); Newman v. Legal Servs. Corp., 628 F.Supp. 535 (D.D. C.1986); Sterling Drug, Inc. v. Oxford, 294 Ark. 239, 743 S.W.2d 380 (1988); Wheeler v. Caterpillar Tractor Co., 108 Ill.2d 502, 92 Ill.Dec. 561, 485 N.E.2d 372 (1985); Parnar v. Americana Hotels, Inc., 65 Haw. 370, 652 P.2d 625 (1982); Palmateer v. International Harvester Co., 85 Ill.2d 124, 52 Ill.Dec. 13, 421 N.E.2d 876 (1981); Nees v. Hocks, 272 Or. 210, 536 P.2d 512 (1975); Geary v. United States Steel Corp., 456 Pa. 171, 319 A.2d 174 (1974); Monge v. Beebe Rubber Co., 114 N.H. 130, 316 A.2d 549 (1974); Frampton v. Central Indiana Gas Co., 260 Ind. 249, 297 N.E.2d 425 (1973); Kouff v. Bethlehem-Alameida Shipyard, 90 Cal.App.2d 322, 202 P.2d 1059 (1949). This list of cases is by no means exhaustive of all of the jurisdictions that have stated a public policy remedy.
In Palmateer, supra, the court stated:
"There is no precise definition of the term. In general, it can be said that public policy concerns what is right and just and what affects the citizens of the State collectively. It is to be found in the State's constitution and statutes and, when they are silent, in its judicial decisions. Although there is no precise line of demarcation dividing matters that are the subject of public policies from matters purely personal, a survey of cases in other States involving retaliatory discharges shows that a matter must strike at the heart of a citizen's social rights, duties, and responsibilities before the tort will be allowed."
85 Ill.2d at 130, 52 Ill.Dec. at 15-16, 421 N.E.2d at 878-79.
*1057 Any remedy based on a public policy exception to the employment-at-will doctrine should be narrowly tailored to avoid any undue infringement on the employer's right to discipline and control his employees. Thus, the remedy should be limited in its application and should address only those terminations that "strike at the heart" of a citizen's personal rights. I would limit the public policy remedy so as to address only terminations that result from an employee's refusing to commit a criminal, fraudulent, or otherwise illegal act. Of necessity, therefore, I would overrule Hinrichs v. Tranquilaire Hospital, 352 So.2d 1130 (Ala.1977), to the extent necessary to effectuate this remedy.
SHORES, J., concurs.
JONES, Justice (concurring in the result).
I am so unalterably opposed to the majority of the Court's opinion in Hinrichs v. Tranquilaire Hospital, 352 So.2d 1130 (Ala.1977), that I cannot agree that it should be cited as authority for this or any other holding by this Court. Nonetheless, I agree that the undisputed facts of this case require a conclusion that the trial court properly entered Alfa's summary judgment.
NOTES
[1] Although the trial court indicated in its judgment that it was dismissing the wrongful termination claim pursuant to Alfa's Rule 12(b)(6), Ala.R.Civ.P., motion, it appears to us that the trial court considered matters outside the pleadings, and, therefore, that that motion was treated as one for summary judgment under Rule 12(b).
[2] Salter made other allegations of breach of contract and fraud, and her claims based on those other allegations remain pending below.
[3] Salter's agent's contract read, in pertinent part, as follows:

"We both agree that this contract, together with any and all riders and supplements hereto, shall terminate:
"A. Ten days following written notice of termination by either party to the other party computed from date of mailing said notice to the last known address of such other party by registered or certified mail. Either party may elect to so terminate this contract, and no cause shall be required."
[4] Both Meeks and Bender Ship Repair have been effectively overruled by the Legislature's adoption of statutory rules to the contrary. See Ala.Code 1975, § 12-16-8.1, which overruled Bender Ship Repair, and Ala.Code 1975, § 25-5-11.1, which overruled Meeks.
[5] Salter does not argue that she should be allowed to pursue the fraud claim under a "public policy" exception to the employee-at-will doctrine. We note, however, that Hinrichs v. Tranquilaire Hospital, supra, would appear to preclude recovery against Alfa under that theory.