MURDOCK, Judge.
Charles S. Perryman, appearing pro se, appeals from a summary judgment entered by the Shelby Circuit Court against him and in favor of AmSouth Bank. Perry-man also purports to appeal on behalf of Perryman Group, Inc., from a default judgment entered by the Shelby Circuit Court against Perryman Group.
In August 1996, Perryman Group and AmSouth entered into a “Business Flex-line of Credit Agreement” (“the credit agreement”). Pursuant to the credit agreement, AmSouth extended a $50,000 line of credit to Perryman Group. As collateral to secure the line of credit, Perryman Group executed a “Security Agreement for Tangible Personal Property” (“the security agreement”) and a “UCC-1 Financing Statement” (“the financing statement”). The security agreement granted AmSouth a security interest in all of Perryman Group’s accounts, equipment, accessories, and parts. In addition, Perryman, individually, executed a “Continuing Guaranty Agreement” (“the guaranty agreement”) in favor of AmSouth that, in part, “unconditionally and absolutely” guaranteed the repayment of Perryman Group’s line of credit “upon demand at any time after maturity thereof (whether by acceleration or otherwise).” The guaranty agreement also provided that
■“[AmSouth] will not be required first to resort to [Perryman Group] ... or to the security pledged or granted to it by any instrument or agreement ..., but in case of default in the payment of any of the Liabilities [AmSouth] may forthwith look to [Perryman] ... for payment under the provisions hereof.”
In March 2003, AmSouth filed a complaint in the Shelby Circuit Court alleging that Perryman Group had breached the credit agreement by not making the required payments thereunder, that Am-South had accelerated the balance due under the credit agreement, and that Per-ryman had breached the guaranty agreement by not paying AmSouth the outstanding balance owed by Perryman Group under the credit agreement. Am-South alleged that the outstanding balance due under the credit agreement was “not less than $35,992.11,” and it requested that the trial court enter a judgment against Perryman Group and Perryman for the outstanding balance, plus interest, reasonable attorney fees (as provided by the credit agreement and the guaranty agreement), and costs of court.
On May 6, 2003, Perryman filed an answer, pro se, denying the allegations of the complaint; no answer was filed on behalf of Perryman Group. On May 28, 2003, AmSouth filed a motion for a default judgment against Perryman Group based on its failure to answer or otherwise respond to AmSouth’s complaint. The motion for a default judgment, which was supported by affidavits from an AmSouth representative and AmSouth’s attorney, requested an award of approximately $35,992, plus interest, as damages and an award of approximately $5,398 as attorney fees (an amount equal to 15% of the outstanding balance due under the credit agreement). On May 30, 2003, the clerk of the court entered a default against Perryman Group.
On June 4, 2003, AmSouth filed a motion for a summary judgment against Perry-man. In support of its motion, AmSouth filed (1) an affidavit from an AmSouth representative stating, in part, that the outstanding balance due under the credit agreement was “not less than $35,992.11,” exclusive of interest; (2) copies of Perry-man Group’s loan documents and the guaranty agreement; (3) an affidavit from its attorney regarding attorney fees; and (4) a brief containing a narrative statement of undisputed facts.
*131 On June 13, 2003, Perryman filed a response to AmSouth’s summary-judgment motion, alleging that AmSouth had wrongly stated in its complaint and in the evidence filed in support of its summary-judgment motion that it had filed the financing statement with the Alabama Secretary of State. Perryman alleged that he had been unable to determine during discovery whether the financing statement had in fact been filed with the Secretary of State. He also noted that the copy of the financing statement that was filed with the court did not reflect any filing information. Perryman stated that the alleged misstatements regarding the financing statement “only enforce the need for [AmSouth] to appear in Court so that all their documentation and request for a monetary judgment against [Perryman] can be challenged by [Perryman].” According to Perryman, “[t]he misrepresentation ‘as fact’ of the UCC document to the Court, leads to other questions regarding the accuracy of and bases for a monetary judgment.” Perryman also filed a motion requesting that the trial court deny AmSouth’s attorney-fee request; that motion essentially demonstrated that Perryman did not understand how Am-South could be utilizing two attorneys from the same law firm and that he did not understand the basis of AmSouth’s attorney-fee request.
AmSouth filed a reply to Perryman’s response, alleging that its claim against Perryman was based on the terms of the guaranty agreement and the credit agreement. AmSouth alleged that it had not attempted to foreclose on the collateral pledged by Perryman Group, that the alleged failure to file the financing statement with the Secretary of State was factually irrelevant to its action against Perryman, and that Perryman had failed to demonstrate any genuine issue of material fact.
On August 6, 2003, AmSouth and Perry-man appeared at a hearing on AmSouth’s summary-judgment motion. On August 12, 2003, the trial court entered the following order on the case action summary sheet:
“From 8/6/03: Plaintiff appeared this date by and through its attorney and Defendant Charles S. Perryman appeared pro se. Said Defendant orally requested additional time for discovery to oppose Plaintiffs Summary Judgment Motion. Said Defendant shall be allowed to proceed with discovery from Plaintiff and any counter-affidavit must be filed in this Court on or before September 2, 2003. This matter is re-set for Wednesday, September 3, 2003 at 9:00 a.m. at which time the Court shall consider Plaintiffs Summary Judgment.”
On August 20, 2003, Perryman faxed a request for production of documents to AmSouth’s counsel. Perryman requested that AmSouth make the following original loan documents available for inspection on August 26, 2003: the credit agreement, the financing statement, the guaranty agreement, a complete account history and payment history, the financial documents used to determine the amount that AmSouth claimed was due under the credit agreement, and all correspondence pertaining to its claim. On August 29, 2003, Perryman filed an affidavit that stated, in part:
“3.) I faxed on Wednesday, August 20, 2003, a Request for Production to [AmSouth’s counsel]. I requested Tuesday, August 26, 2003 at 10:00 a.m. as the meeting day and time. [AmSouth’s counsel] contacted me to say the request had been received and that she would call AmSouth Bank to coordinate the documents and the meeting place. She said she would follow-up and call me.
*132 “4.) I offer the following actions and general conversation notes to the Court:
“No further communication occurred or was received until I called [AmSouth’s counsel’s] office the morning of August 27, 2003 in an effort to ascertain why the requested August 26 meeting did not take place.... When [AmSouth’s counsel] contacted me later that morning, she said that she was glad that I had called ‘to remind her.’ She said she would have to call Am-South, but the documents would probably not be available until the end of the week (I point out that the end of the week would have been Friday August 29th). I responded that this did not leave me adequate time to review the documents and prepare a detailed Discovery response since the deadline given by the Court was Tuesday, September 2. [AmSouth’s counsel] said she would have to call me later, but as a footnote added, ‘that they really had about 30 days in which to respond to a request.’ I again reminded [AmSouth’s counsel] that my deadline was the following Tuesday, September 2 and that I was just complying with the Court. That concluded our conversation as of Wednesday, August 27th.
“5.) It is my opinion [AmSouth’s] counsel did no follow-up on my request in a timely manner (based on the. fact that she thanked me for ‘reminding her’ the day after the original meeting was to take place) and was therefore unable to produce the requested documents within a time frame I believe was reasonable and to which I believe on August 20th that we were mutually working towards. Due to other commitments and work obligations I was unable to meet Thursday or Friday even if the documents had been made hurriedly available by [AmSouth]. Therefore, I’m unable to respond to the Court regarding my Discovery findings and other matters as directed by this Court since [AmSouth] was unable to produce the documents as requested.”
Perryman attached a copy of his request for production to his affidavit.
After hearing oral argument from both parties regarding AmSouth’s summary-judgment motion, the trial court entered an order on September 8, 2003, that stated:
“[I]t is ORDERED ADJUDGED and DECREED by the Court that Plaintiff AmSouth Bank have judgment against Defendants Perryman Group, Inc., an Alabama Corporation, and Charles S. Perryman and recover from said defendants jointly and severally the sum of $41,390.03[1] (representing $35,992.11 owed to AmSouth and $5,398.82 attorney’s fees) plus costs of court.”
Perryman appeals.
Before addressing the issues raised by Perryman, we must first address his purported appeal on behalf of Perry-man Group. Perryman Group is a corporation. “[T]he general rule is that a corporation can appear in court only through an attorney; it cannot appear pro se.” A-OK Constr. Co. v. Castle Constr. Co., 594 So.2d 53, 54 (Ala.1992). Although our courts have apparently, in limited circumstances, decided an appeal on the merits when an *133 appellate brief has been submitted by the president of a corporation, see id., those circumstances are inapplicable in this case; Perryman executed the appellate brief in his individual capacity only. Thus Perry-man Group has not filed a brief as required by Rule 2(a)(2)(A), Ala. R.App. P. Perryman’s purported appeal on behalf of Perryman Group is therefore dismissed.
To resolve Perryman’s various contentions asserted in his individual capacity, which are somewhat difficult to follow, we must address only one issue: whether the trial court erred by granting AmSouth’s summary-judgment motion when Perry-man had allegedly not had an opportunity to review the documentation that he had requested from AmSouth.[2] Specifically, Perryman contends in his appellate brief that AmSouth’s alleged misstatement in its complaint regarding the filing of the financing statement made the “statements and documents submitted to the court suspect at best” and that he “should be allowed to review the books, etc. as requested, especially when a lump sum, non-itemized claim of monetary damages in the ‘not less than’ amount of $35,992.11 is being sought.”
We review a trial court’s summary judgment de novo, giving the judgment no presumption of correctness. Nationwide Ins. Co. v. Rhodes, 870 So.2d 695, 696 (Ala.2003). A summary judgment is proper when “there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law.” Rule 56(c)(3), Ala. R. Civ. P. Generally,
“[w]hen a motion for summary judgment is made and supported as provided in [Rule 56], an adverse party may not rest upon the mere allegations or denials of the adverse party’s pleading, but the adverse party’s response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against him.”
Rule 56(e), Ala. R. Civ. P. However, Rule 56(f), Ala. R. Civ. P., states:
“Should it appear from the affidavits of a party opposing the motion [for a summary judgment] that the party cannot, for reasons stated, present by affidavit facts essential to justify the party’s opposition, the court may deny the motion for summary judgment or may order a continuance to permit affidavits to be obtained ... or discovery to be had or may make such other order as is just.”
As our Supreme Court stated in Phillips v. AmSouth Bank, 833 So.2d 29 (Ala.2002):
“ ‘Rule 56(f) protects a party opposing a motion for summary judgment if the party states reasons why he cannot present essential facts.’ Starks v. Commercial Union Ins. Co., 501 So.2d 1214, 1216 (Ala.1987). ‘The rule “should be liberally applied to allow parties an ample opportunity to marshal necessary facts to support their respective positions.” ’ Id. (quoting Central Acceptance Corp. v. Colonial Bank of Alabama, N.A., 439 So.2d 144, 147 (Ala.1983)).”
*134 Phillips, 833 So.2d at 31-32 (emphasis added); see also Stallworth v. AmSouth Bank of Alabama, 709 So.2d 458, 469 (Ala.1997). Our Supreme Court has also stated that “[t]he mere pendency of discovery does not bar summary judgment.” Reeves v. Porter, 521 So.2d 963, 965 (Ala.1988). Our courts have affirmed a trial court’s entry of a summary judgment, even when the moving party is
“under a court order to produce certain documents[, and the opposing party] ... has not persuaded us, and ... apparently did not persuade the trial court, that these documents were or might have been crucial to [the opposing party’s] case (i.e., that their disclosure and introduction would or might have precluded the entry of the summary judgment).”
Salter v. Alfa Ins. Co., 561 So.2d 1050, 1054 (Ala.1990). Further, and more importantly in the present case:
“[Rule 56(f)] will not be applied to aid a party who has been ... dilatory.... The courts will not delay a case to allow discovery when the discovery sought could have been instituted earlier, especially when there is no reason to believe that it will lead to a denial of the motion. ... Thus, the earliest possible use of the discovery procedures seems imperative for a party seeking to avoid summary judgment.”
10B Charles Alan Wright et al., Federal Practice & Procedure § 2741 at pp. 429-37 (3rd ed.1998).
This case was initially set for trial on August 20, 2003. As stated above, Am-South obtained an entry of default against Perryman Group in May 2003, and it filed its motion for a summary judgment against Perryman on June 4, 2003. A few days later, Perryman filed a response to the summary-judgment motion. Perry-man’s substantive position was that an alleged misrepresentation in AmSouth’s complaint as to the filing of a document that was not of consequence to the claim against him, i.e., the financing statement, called into question all documents on which AmSouth relied in asserting its claim. Noticeably absent from Perryman’s response was any allegation (1) that Perryman believed that the documents submitted by AmSouth in support of its summary-judgment motion were not true and correct copies of the documents that he executed on behalf of himself and Perryman Group or (2) that he believed AmSouth had incorrectly calculated the amount that it claimed Perryman Group and Perryman owed under the credit agreement and the guaranty agreement, respectively.
On August 6, 2003, the trial court held a hearing on AmSouth’s motion for a summary judgment. There is no evidence in the record that Perryman attempted any formal discovery before August 6, 2003. After that hearing, the trial court continued the hearing on the summary-judgment motion until September 3, 2003, specifically to allow Perryman additional time for discovery and to allow him to file an affidavit in response to AmSouth’s motion, i.e., to “dispute the amount allegedly owed by said Defendant and/or to dispute the continuing guarantee and/or to dispute the attorney’s fee issue.” Based on the record, Perryman filed his first discovery request on August 20, 2003, two weeks after he knew that he should have been preparing for the September 3, 2003, hearing and approximately two weeks before his affidavit in response to AmSouth’s summary-judgment motion was due to be filed on September 2, 2003. More importantly, when Perryman filed his affidavit stating that he had been unable to complete discovery, he made no assertion that the discovery that he belatedly sought would allow him to “dispute the amount allegedly owed by said Defendant and/or to dispute *135 the continuing guarantee and/or to dispute the attorney’s fee issue.”
Perryman “has not persuaded us, and [he] apparently did not persuade the trial court, that [the requested] documents were or might have been crucial to [his] case.” Salter, 561 So.2d at 1054. Accordingly, the summary judgment in favor of AmSouth and against Perryman, individually, is due to be affirmed. Perryman’s purported appeal on behalf of Perryman Group is hereby dismissed.
AFFIRMED IN PART; APPEAL DISMISSED IN PART.
CRAWLEY, THOMPSON, and PITTMAN, JJ., concur.
YATES, P.J., concurs in the result, without writing.

. We note that this amount is 90 cents less that the sum of the amounts stated in the parenthetical.

. Perryman argues in his appellate brief that "AmSouth never complied with the Discovery process, granted to Perryman by the Court and the Court should have compelled Am-South to do so or the Court should have allowed Perryman sufficient time to file a motion to compel discovery pursuant to Rule 37(a).” Perryman did not file a motion requesting that the trial court compel discovery under Rule 37, Ala. R. Civ. P., although he clearly could have done so.