Based on a jury verdict, the trial court entered a judgment for the plaintiff, Tiffany Meeks, in her action alleging that she had been dismissed from her employment for filing a workers' compensation claim. The defendant, Keystone Foods, Inc., appeals from the denial of its motion for a judgment notwithstanding the verdict.
Viewing the evidence in a light most favorable to the nonmoving party, as we are required to do, we find that the evidence tended to show the following:
The plaintiff, Tiffany Meeks, began working for Keystone in March 1990. Keystone is in the business of processing chicken. Meeks was hired to cut chicken into strips. Several months later, Meeks was trained to operate the machine that formed processed chicken into chicken "nuggets" or chicken "patties."
On the night of September 21, 1990, Meeks was working on the "breader/batter" machine, which coats the chicken with bread crumbs. The breader machine became clogged. Meeks used her hand to loosen the clog and in the process was injured. Although Meeks normally operated the machine that formed processed chicken into nuggets or patties, she had worked on the breading machine before the accident.
Meeks filed a claim for workers' compensation benefits based on the injury to her hand. Meeks returned to work in February 1991. Keystone created a light-duty position for her, in which she was to do some clerical work until she was able to return to her normal activities. Meeks did clerical work for three or four weeks, after which she was moved to a job spreading chickens out on conveyor belts.
In July 1991, Meeks was moved into the test kitchen. Her job there was to collect samples of cooked chicken taken from the factory, to make sure that no raw meat, bones, or gristle was in the samples. Subsequently, Meeks began working in the laboratory. Her job there consisted of using the computer, gathering samples of chicken, and taking swab samples from certain equipment in order to check for bacteria.
After working in the laboratory for two months, Meeks received a written warning for putting the incorrect code on samples that were being sent to a lab in Pennsylvania. Meeks received another warning for failing to pull samples; that failure had caused a delay in shipping the chicken. Meeks was also warned at the same time for failing to send swab samples from certain machinery to the lab for testing. Meeks also received warnings for taking too much time for lunch and for failing to report for work one day.
On March 12, 1992, Meeks received another warning for failing to correctly date the samples. Meeks was also suspended for three days. On April 15, 1992, Meeks was given a warning for failing to pull samples.
After this last warning, Meeks met with the director of Keystone's quality assurance division; a supervisor; and the union representative. Based on her job performance, the director told Meeks that he could not trust her to work in the lab anymore. He then offered her a job in another part of the plant. (R.T. 75-76; 133). Meeks refused to take another job, and she left. Meeks's employment was then terminated.
On April 30, 1992, Meeks sued Keystone, alleging wrongful termination. Following a trial, the jury awarded her $30,000 in past damages, $71,000 in future damages, and $100,000 in punitive damages. Keystone moved for a JNOV,[1] or, in the alternative, a new trial; the trial court denied its motion.
The sole issue is whether Meeks presented sufficient evidence of a retaliatory discharge to support her action under §25-5-11.1, Ala. Code 1975.
Section 25-5-11.1 provides in pertinent part: *Page 237 
"No employee shall be terminated by an employer solely because the employee has instituted or maintained any action against the employer to recover workers' compensation benefits under this chapter. . . ."
An employee establishes a prima facie case of retaliatory discharge by presenting substantial evidence that he or she was terminated for seeking to obtain workers' compensation benefits. Twilley v. Daubert Coated Products, Inc.,536 So.2d 1364 (Ala. 1988).
We conclude that Meeks presented no evidence that she was in fact "terminated." Meeks was prevented from working in the lab. However, Meeks herself testified that she was offered another job with Keystone but that she refused to take it.
A termination may be a "constructive termination." SeeIrons v. Service Merchandise Co., 611 So.2d 294 (Ala. 1992). An employee proves a constructive termination by presenting substantial evidence that the employer deliberately made the employee's working conditions so intolerable that the employee was forced to resign.
Irons.
Meeks makes no argument that Keystone made her working situation so intolerable that she was forced to leave. Rather, the record shows that Meeks had failed to adequately do the job to which she was assigned and that when she was going to be given another job she voluntarily left her employment. Additionally, nothing in the record indicates that any of the warnings given to Meeks were meritless and were given solely to induce her to leave. Therefore, Meeks failed to show that she was "terminated" in retaliation for seeking workers' compensation benefits.
The trial court erred in denying Keystone's motion for a JNOV. The judgment for Meeks is reversed and a judgment is rendered for Keystone.
REVERSED AND JUDGMENT RENDERED.
HORNSBY, C.J., and MADDOX, SHORES, KENNEDY, and COOK, JJ., concur.
[1] Keystone had moved for a directed verdict following the plaintiff's presentation of her evidence, thus entitling it to move for a JNOV pursuant to Rule 50, A.R.Civ.P.