Clayton J. Weldon, Sr., filed a complaint for workers' compensation benefits in the Circuit Court of Talladega County against Avondale Mills, Inc., alleging that he was owed benefits for a work-related occupational disease. Following oral proceedings, the trial court entered an order, finding that Weldon had sustained a 48% loss of earning capacity as a result of the occupational disease. Weldon was also awarded damages on the basis of retaliatory discharge. Avondale appeals.
At the time of the hearing, Weldon was 54 years of age, with a seventh grade education. He received his G.E.D. and attended electronic school. He began working for Avondale in 1970 and was employed with it continuously until March 29, 1994. His final position at Avondale was that of Electrician III.
Avondale routinely tests its employees for pulmonary function. The United States Occupational Safety and Health Administration (OSHA) requires that such testing be done on workers who work around cotton dust. Weldon's job required him to work in an area with cotton dust.
During the course of his employment, Weldon began to experience respiratory problems. In December 1990 he saw Dr. Richard Simmons, a pulmonary specialist who regularly evaluates employees of Avondale. After several office visits and tests, Dr. Simmons diagnosed Weldon as having obstructive lung disease and asthma. He advised Weldon to stop smoking. He further advised Weldon that if he were to continue working around cotton dust, he would have to wear a mask. Dr. Simmons opined that the cotton dust aggravated Weldon's condition. Dr. Simmons gave Weldon a medical impairment rating relating to the cotton dust exposure of 8% to his body as a whole. Considering all other factors, he opined that Weldon suffered a 40% impairment of the whole person.
Weldon began seeing Dr. Russell Beatty, a pulmonary specialist, in March 1993. After the first examination Dr. Beatty diagnosed Weldon as having emphysema and asthmatic bronchitis. Dr. Beatty felt that Weldon's cigarette smoking and his exposure to cotton dust aggravated Weldon's condition. On March 17, 1994, Dr. Beatty wrote a letter to Avondale, summarizing his evaluation of Weldon and informing Avondale that Weldon "should be kept out of any area where he is exposed to cotton dust." He also informed *Page 366 
Avondale that Weldon would not be able to tolerate wearing a mask.
On March 29, 1994, Weldon met with his shop superintendent and members of Avondale's personnel department. Weldon explained to them the difficulty he was having breathing. He also related to them the difficulty he had with wearing a mask. Weldon testified that he was told that if he could not wear a mask, then he could not work at Avondale. Weldon told them that he could not wear a mask. Weldon testified that he was then told that he could "go home." He was not allowed to finish his shift.
At the March 29, 1994, meeting there was a conversation concerning a possible job opening for Weldon in groundskeeping. Weldon testified that he could not physically handle the job on a sustained basis. Dr. Beatty also stated that Weldon would not be able to perform the duties involved with the offered position.
Avondale subsequently offered Weldon a security officer's job. Weldon testified, however, that he was not interested in the job because he had already applied for his Social Security benefits.
Weldon called Debra Baragona, Avondale's vocational rehabilitation consultant, as an adverse witness. Baragona testified that, in her opinion, Weldon had a 48% vocational disability in the open labor market.
With regard to the restrictions placed on Weldon, Dr. Beatty testified that although he did not believe that Weldon was completely disabled from any type of job, he did feel that Weldon has severe limitations and should not be expected to do any form of manual labor. Dr. Beatty stated that Weldon should not be exposed to high humidity, hot conditions, or severely cold conditions and that Weldon should not be around any sort of dust, vapor, fume, mist, or spray. Dr. Beatty further stated that this basically leaves Weldon with a clerical or administrative type job that does not require any form of physical labor. Dr. Beatty expected those restrictions to be permanent.
Dr. Beatty permanently restricted Weldon to no lifting over 25 pounds, no climbing of more than 1 flight of stairs, and no job that involves him continuously moving from one place to another.
Avondale contends that the trial court erred in finding that Weldon suffered from a compensable occupational disease.
The review of this case is governed by the new Workers' Compensation Act. The standard of review this court must apply in cases under the new Act is derived from § 25-5-81(e)(1), Code 1975, which provides: "In reviewing the standard of proof set forth herein and other legal issues, review by the Court of Civil Appeals shall be without a presumption of correctness." Section 25-5-81(e)(2), further provides: "In reviewing pure findings of fact, the finding of the circuit court shall not be reversed if that finding is supported by substantial evidence." Substantial evidence is " 'evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.' " Ex parte Trinity Industries, Inc., 680 So.2d 262
(Ala. 1996) (quoting West v. Founders Life Assurance Co. ofFlorida, 547 So.2d 870 (Ala. 1989)).
Section 25-5-110, Code 1975, provides the conditions for recovery under the Workers' Compensation Act for an occupational disease. To be occupational, the disease must be "due to hazards in excess of those ordinarily incident to employment in general and is peculiar to the occupation in which the employee is engaged." § 25-5-110, Code 1975.
The fact that an employee had a preexisting condition does not affect an award of compensation if the job combined with the preexisting condition to produce injury or death. JamesRiver Corp. v. Mays, 572 So.2d 469 (Ala.Civ.App. 1990).
To recover benefits under this view, the claimant must prove causation or aggravation of an existing condition. An occupational disease is not compensable if it is not caused or aggravated by the nature of the employment. Ex parte Cash,624 So.2d 576 (Ala. 1993). *Page 367 
The trial court found that Weldon suffered from an occupational disease and that he sustained a 48% loss of ability to earn.
The record supports the court's findings. While the facts were in dispute as to the cause of Weldon's respiratory condition, the facts were undisputed that his condition was aggravated by the nature of his employment. We consider that the aggravation was due to hazards in excess of those ordinarily incident to employment in general and that they were peculiar to Avondale. We find no error with the trial court's finding that Weldon suffered from an occupational disease.Courtaulds Fibers, Inc. v. Finley, 644 So.2d 5
(Ala.Civ.App. 1994). Furthermore, the trial court's loss of ability to earn finding is supported by the record.
Avondale asserts that Weldon's refusal to accept the offered employment precludes him from receiving workers' compensation benefits.
Section 25-5-57(a)(3)e, Code 1975, provides the following:
 "e. Effect of Refusal of Suitable Employment. — If an injured employee refuses employment suitable to his or her capacity offered to or procured for him or her, he or she shall not be entitled to any compensation at any time during the continuance of the refusal. . . ."
There was conflicting evidence presented as to whether the offered jobs were "suitable" to Weldon's capacity. Due to this conflict, we are unwilling to find the trial court in error.
Avondale asserts that the trial court erred in awarding damages to Weldon for his vocational disability rating and should have awarded damages, if any, for his medical impairment rating.
Avondale's assertion is based on § 25-5-57(a)(3)i, Code 1975. That section is applicable to situations wherein the employee has returned to work. Weldon has not returned to work. Section25-5-57(a)(3)i, Code 1975, has no application to the facts of this case.
Avondale asserts that the trial court erred in allowing Weldon to cross examine Baragona under the provisions of Rule 43(b), Ala.R. Civ. P. Avondale cites no authority to support its assertion. We, therefore, decline to address it. Harris v.Harris, 528 So.2d 866 (Ala.Civ.App. 1988).
Avondale finally contends that the trial court erred in awarding damages to Weldon under the retaliatory discharge section of the Workers' Compensation Act.
Section 25-5-11.1, Code 1975, provides, in part, the following:
 "No employee shall be terminated by an employer solely because the employee has instituted or maintained any action against the employer to recover workers' compensation benefits under this chapter. . . ."
In order to establish a prima facie case of retaliatory discharge, an employee must present substantial evidence that he or she was terminated for seeking to obtain workers' compensation benefits. Keystone Foods Corp. v. Meeks,662 So.2d 235 (Ala. 1995).
Weldon failed to present any evidence that he was in fact "terminated." Weldon was prevented from working in certain areas of Avondale due to his health problems. However, the evidence is undisputed that Weldon was offered other jobs with Avondale and he refused the offers. Keystone.
Weldon insists that he was constructively terminated. "An employee proves a constructive termination by presenting substantial evidence that the employer deliberately made the employee's working conditions so intolerable that the employee was forced to resign." Keystone.
Weldon failed to present any evidence that Avondale made his working situation so intolerable that he was forced to leave. The facts of this case do not lend themselves to an application of constructive termination.
We find that Weldon failed to prove that he was terminated in retaliation for seeking workers' compensation benefits. Therefore, that portion of the trial court's order awarding damages for retaliatory discharge is reversed. The remainder of the court's order is affirmed. *Page 368 
The foregoing opinion was prepared by Retired Appellate Judge L. CHARLES WRIGHT while serving on active duty status as a judge of this court under the provisions of § 12-18-10(e), Code 1975.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
ROBERTSON, P.J., and YATES and CRAWLEY, JJ., concur.