Sandra Watwood sued her employer, White Consolidated Industries, Inc., d/b/a Americold Compressor Corporation (hereinafter "Americold"), to recover workers' compensation benefits and damages for retaliatory discharge. On May 3, 1996, Americold moved for a partial summary judgment on Watwood's retaliatory discharge claim. Watwood filed an opposition to Americold's motion for summary judgment on June 12, 1996. After a hearing, the trial judge entered an order on September 17, 1996, granting Americold's motion for partial summary judgment on the retaliatory discharge claim. Watwood appeals. The Supreme Court of Alabama transferred the appeal to this court, pursuant to § 12-2-7, Ala. Code 1975.
Watwood was injured during the course of her employment on September 1, 1993, when a chair in which she was sitting broke, causing her to fall to a concrete floor. Watwood's back was injured in the accident. Watwood had two surgeries because of this accident and was out of work for approximately two years. Americold paid Watwood's medical bills and paid her temporary total disability benefits during the time she was not able to work. On March 14, 1995, Watwood's doctor sent a letter listing her at maximum medical improvement and releasing her to return to work in a sedentary job for four hours per day for a period of six weeks.[1] Because Americold did not have a position suitable to Watwood's limitations, Watwood did not return to work at that time; she continued to receive temporary total disability benefits.
On March 15, 1995, one day after being released to return to part-time light-duty work, Watwood saw a vocational specialist; that specialist stated that, given her medical restrictions and educational and work history, Watwood was not employable within the labor market in Alabama. On March 30, 1995, Watwood used the vocational specialist's evaluation as the basis for her application for Social Security disability benefits. In her application for Social Security disability benefits, Watwood stated that she was permanently and totally disabled, and she stated that she would notify the Social Security Administration if her condition improved to the point that she could return to work.
On August 15, 1995, Watwood's doctor released her to return to work for eight-hour shifts in a sedentary job for six weeks, with instructions that Watwood was to return to him after the six weeks for an evaluation. At that time, Americold had a job for Watwood that was consistent with her medical restrictions. *Page 212 
Watwood worked at Americold for the six weeks in a temporary, sedentary job. Americold made several accommodations to Watwood's condition at this time. Watwood missed several days of work and left early on other days. She did not give Americold any doctor's excuse for these absences. Watwood returned to her doctor for evaluation on September 28, 1995. She continued to complain of pain. The doctor noted that he had seen the video of the job Watwood was performing and that "[he could not] see any reason why she cannot do this work."[2] Watwood strenuously argues that the video her doctor saw did not accurately represent the job she was asked to perform. On October 2, 1995, Watwood returned to work at a different job; she was able to do this work for only one and a half hours. Watwood left work and did not return. Watwood did not obtain a medical excuse for missing work after her September 28, 1995, release-to-work date.
On October 5, 1995, Americold's human resources representative sent a letter to Watwood, requesting that she return to work and offering to make improvements to make her job more comfortable. Watwood's attorney sent a letter, dated October 11, 1995, to Americold, reiterating Watwood's complaints of pain and her assertion that she was unable to work. The letter also notified Americold that Watwood was seeking a second opinion regarding her ability to work. On October 12, 1995, Watwood saw another doctor for a second opinion about whether she was able to work; that doctor also stated that Watwood could return to work with the restrictions noted by her original doctor in her September 28, 1995, release to return to work.
On October 16, Americold's human resources representative sent a letter, via fax and mail, to Watwood's attorney, noting the doctors' opinions that Watwood could return to work, and stating that her failure to report to work would constitute "a voluntary quit." In response, on October 18, 1995, Watwood's attorney sent a letter to Americold stating that Watwood would return to work as soon as she was physically able to do so. Also on October 18, 1995, Americold notified Watwood that it considered her to have terminated her employment, stating that her refusal to return to work after being released to do so by her doctors constituted "a voluntary quit."
On October 25, 1995, Watwood initiated this action, alleging that Americold had constructively discharged her and had done so in retaliation for her filing the workers' compensation claim.
On November 2, 1995, Watwood asked the Social Security Administration for a hearing on the denial of her application for Social Security disability benefits.
On appeal, Watwood argues that the trial court erred in granting Americold's motion for partial summary judgment on the retaliatory discharge claim.
 "In reviewing the disposition of a motion for summary judgment, we utilize the same standard as the trial court in determining 'whether the evidence before [it] made out a genuine issue of material fact' and whether the movant was 'entitled to a judgment as a matter of law.' Bussey v. John Deere Co., 531 So.2d 860, 862
(Ala. 1988); Rule 56(c), Ala. R. Civ. P. When the movant makes a prima facie showing that there is no genuine issue of material fact, the burden shifts to the nonmovant to present substantial evidence creating such an issue. Bass v. SouthTrust Bank of Baldwin County, 538 So.2d 794, 797-98 (Ala. 1989). Evidence is 'substantial' if it is of 'such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.' West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala. 1989).
 "Our review is further subject to the caveat that this Court must review the record in a light most favorable to the nonmovant and must resolve all reasonable doubts against the movant. Hanners v. Balfour Guthrie, Inc., 564 So.2d 412
(Ala. 1990)." *Page 213 
Ex parte Mutual Savings Life Insurance Co., 698 So.2d 772
(Ala. 1997).
Section 25-5-11.1, Ala. Code 1975, provides in part: "No employee shall be terminated by an employer solely because the employee has instituted or maintained any action against the employer to recover workers' compensation benefits under this chapter." Watwood argues that the summary judgment was improper because, she argues, she made the requisite prima facie showing of the elements of her retaliatory discharge action. She argues that the Supreme Court of Alabama set forth the plaintiff's burden under a claim of retaliatory discharge as follows:
 "We hold that an employee may establish a prima facie case of retaliatory discharge by proving that he was 'terminated' because he sought to recover worker's compensation benefits, which would be an impermissible reason. The burden would then shift to the defendant employer to come forward with evidence that the employee was terminated for a legitimate reason, whereupon the plaintiff must prove that the reason was not true but a pretext for an otherwise impermissible termination."
Twilley v. Daubert Coated Products, Inc., 536 So.2d 1364, 1369
(Ala. 1988). The Supreme Court of Alabama has defined "constructive discharge" as a situation in which "the employer deliberately makes an employee's working conditions so intolerable that the employee is forced into an involuntary resignation." Irons v. Service Merchandise Co., 611 So.2d 294,295 (Ala. 1992). Watwood argues that there exists a genuine issue of material fact as to whether Americold constructively discharged her by making her work conditions so intolerable that she was unable to work, and whether Americold did so in retaliation for her seeking workers' compensation benefits.
However, as Americold points out in its brief, this court has recently held that "an essential element of a retaliatory discharge claim is the plaintiff's willingness and ability to return to work. This principle applies in constructive discharge claims, too." Consolidated Stores, Inc. v. Gargis,686 So.2d 268, 273-74 (Ala.Civ.App.), cert. denied,686 So.2d 278 (Ala. 1996). Thus, Watwood must also establish this element of her retaliatory discharge claim in order to defeat a motion for summary judgment.
Americold argues that Watwood's application for Social Security disability benefits, in which she alleged under oath that she is permanently and totally disabled, precludes her retaliatory discharge action against Americold.
We agree with Americold's argument that Watwood's claim of total, permanent disability for the purposes of recovering Social Security benefits is at odds with her claim of being "willing and able" to return to work as part of her action against Americold. This court has held recently that an application for disability benefits on the ground that the employee is unable to work contradicts any claim that he or she is willing and able to return to work with his or her employer.See Consolidated Stores, Inc. v. Gargis, 686 So.2d at 274. Watwood's application for Social Security disability benefits negates her claim that she was willing and able to return to work, and that Americold's actions prevented her doing so. Because Watwood has failed to create a genuine issue of material fact as to this element of her claim, the summary judgment on the retaliatory discharge claim was proper. Therefore, we affirm.
In her reply brief to this court, Watwood argues that two recent cases from this court dealing with retaliatory discharge, Gargis, supra, and Lambert v. Beverly Enterprises,Inc., 695 So.2d 44 (Ala.Civ.App. 1997), should be overturned. Watwood argues that the holdings in these cases are contrary to the legislative intent of § 25-5-11.1, Ala. Code 1975 — that the section should be liberally construed to effectuate its remedial purpose. Watwood argues that under these cases, any employer who discovers that the injured employee, in applying for Social Security benefits, has alleged total disability, can fire the employee in retaliation for filing a workers' compensation claim. This argument is illogical. An employee who files for Social Security benefits claiming a permanent, total disability obviously does not expect to return to the job that she is incapable of performing, *Page 214 
because of her permanent, total disability, and would have no interest in preserving a claim of retaliatory discharge from that job. Further, the alternative is to allow a situation in which an employee might conceivably recover both Social Security disability benefits and damages for retaliatory discharge from a job to which she claims she is not capable of returning.
AFFIRMED.
CRAWLEY, J., concurs.
ROBERTSON, P.J., and YATES, and MONROE, JJ., concur in the result.
[1] In this letter, Watwood's doctor noted that Watwood's evaluations revealed that she was "self-limiting."
[2] The doctor also testified in his deposition that on that date, September 28, 1995, Watwood and her mother instigated a verbal confrontation with him in his office because of his attempt to return Watwood to work.