This is an appeal of a summary judgment entered in favor of the employer on claims alleging retaliatory discharge and the tort of outrage.
On January 24, 1997, James Hammock filed a complaint against Ryder Dedicated Logistics, Inc. Hammock claimed that he was entitled to workers' compensation benefits for an injury he had sustained to his hand while working for Ryder. Hammock also alleged that Ryder had discharged him from his employment in retaliation for his making a workers' compensation claim (see § 25-5-11.1, Ala. Code 1975), and he also claimed Ryder had committed the tort of outrage. The workers' compensation claim was settled and the trial court approved the settlement on August 22, 1997. Ryder moved for a summary judgment on the claims alleging retaliatory discharge and the tort of outrage. On September 29, 1997, the trial court held a hearing on the summary judgment motion, and on October 7, 1997, it entered a summary judgment for Ryder on both claims. Hammock appealed to the Alabama Supreme Court, which deflected the case to this court pursuant to § 12-2-7(6), Ala. Code 1975.
A summary judgment is proper if there is no genuine issue of material fact and the movant is entitled to a judgment as a matter of law. Rule 56(c)(3), Ala. R. Civ. P.; Bussey v. JohnDeere Co., 531 So.2d 860, 862 (Ala. 1988). The moving party must present, in support of its motion, evidence that would be admissible at trial. Rule 56(e) Ala. R. Civ. P. When the moving party makes a prima facie showing that no genuine issue of material fact exists, the burden shifts to the nonmoving party to rebut that showing by presenting substantial evidence creating a genuine issue of material fact. Bass v. SouthTrustBank of Baldwin County, 538 So.2d 794, 797-98 (Ala. 1989). Evidence is "substantial" if it is "of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." West v. Founders Life Assurance Co. of Florida,547 So.2d 870, 871 (Ala. 1989).
Hammock began working as a cargo handler for Ryder in October 1994. On May 10, 1995, while working in the line and scope of his employment with Ryder, Hammock injured his left hand when a stack of bread trays collapsed. Hammock was off from work because of his injury from May 10, 1995, to February 1996.
In February 1996, Hammock's doctor allowed him to return to work, but under light-duty restrictions. Under these restrictions, Hammock was unable to return to his job as a cargo handler. Ryder created a light-duty position within Hammock's restrictions, and Hammock began working in that position upon his return in February. The light-duty job consisted of answering the telephone, doing light janitorial work, and keeping a record of which trucks were in the parking lot. Hammock received the same pay for the light-duty job that he had received as a cargo handler.
In May 1996, Hammock was determined to be at maximum medical improvement. His doctor maintained that Hammock's restrictions were permanent. Hammock continued working in the light-duty position until July *Page 217 
1996. On July 4, 1996, Hammock was informed that the light-duty position had been eliminated. Hammock claims that, on that same day, his supervisor told him that he needed to contact Larry Gray about his workers' compensation claim. Hammock contacted Gray, who offered Hammock $15,000 to settle his workers' compensation claim if he would voluntarily resign from his employment at Ryder. Hammock refused the offer and never returned to work at Ryder.
To withstand a motion for summary judgment, a plaintiff claiming retaliatory discharge under § 25-5-11.1 must present substantial evidence indicating that he or she was terminated for seeking workers' compensation benefits and indicating that the reasons proffered by the employer for the termination are not true, but are a pretext for an otherwise impermissible termination. Twilley v. Daubert Coated Products, Inc.,536 So.2d 1364, 1369 (Ala. 1988). Section 25-5-11.1 provides:
 "[N]o employee shall be terminated by an employer solely because the employee has instituted or maintained any action against the employer to recover workers' compensation benefits under this chapter or solely because the employee has filed a written notice of violation of a safety rule pursuant to subdivision (c)(4) of Section 25-5-11."
Ryder claims that Hammock failed to make a prima facie showing of retaliatory discharge because, Ryder argues, it did not terminate Hammock's employment with Ryder. To the contrary, Hammock claims, Ryder terminated his employment on July 4, 1996, when he was told that the temporary job had been eliminated and that Ryder did not have any other light-duty positions available.
The trial court's order states that it based the summary judgment upon our Supreme Court's holding in Kent Corp. v.Hale, 699 So.2d 954 (Ala. 1997). In Kent, the Supreme Court reversed a judgment based on a jury verdict in favor of an employee on a retaliatory discharge claim. 699 So.2d at 959. The Court held that the employee was not "terminated" when he was informed that he could not work until he presented medical documentation for his wearing a back brace and was escorted off the work premises; the employer had continued to cover the employee on its employees' medical insurance and to list him as an employee. Id. at 958.
Ryder presented evidence that after July 4, 1996, it still listed Hammock as an employee. Moreover, it is undisputed that Ryder maintained Hammock on its employee medical coverage and that Hammock and his wife both made claims on the medical insurance after July 4, 1996. It is undisputed that no one ever told Hammock that his employment was terminated. In fact, Hammock's argument is contradictory. Hammock claims that he was fired on July 4, however, he also asserts that, after July 4, Ryder offered him a settlement if he would resign.
In Avondale Mills, Inc. v. Weldon, 680 So.2d 364
(Ala.Civ.App. 1996), this court held that the employee had failed to present substantial evidence that he had been "terminated." InWeldon, the employee was prevented from working certain positions because of his medical restrictions. Id. at 367. However, when his employer offered him a position within his restrictions, he refused the offer. Id. It is undisputed that in December 1996, one month before Hammock filed his complaint, Ryder contacted him and told him that a new light-duty position within his restrictions was available and offered him the position. Hammock refused the job.
Further, an essential element that the employee must prove in order to establish a retaliatory discharge is that he is ready, willing, and able to return to his job. Consolidated Stores,Inc. v. Gargis, 686 So.2d 268, 273 (Ala.Civ.App. 1996). Hammock states that he told Ryder that he desired to return to his position as a cargo handler. There is no dispute that under his medical restrictions, Hammock was not able to return to his job as a cargo handler. Hammock was told that he could return to his job as a cargo handler if he got a release for such work from his doctor. Ryder argues that Hammock could have returned to that position at any time after supplying Ryder with a medical release. Hammock admits that he never got a medical release and that he was not physically able to perform *Page 218 
all the duties of a cargo handler. Hammock states that he could perform only about 50% of the work. We note that under the workers' compensation law, Ryder was not required to create a light-duty position, nor was it required to provide the employee with accommodations to aid his ability to perform the job. See Lambert v. Beverly Enterprises, Inc., 695 So.2d 44, 47
(Ala.Civ.App. 1997).
Hammock also argues, in the alternative, that he was "constructively terminated." "An employee proves constructive termination by presenting substantial evidence that the employer deliberately made the employee's working conditions so intolerable that the employee was forced to resign."Keystone Foods Corp. v. Meeks, 662 So.2d 235 (Ala. 1995). Hammock asserts that his employment with Ryder was terminated on July 4, 1996, but that later Gray offered him a settlement if he would voluntarily resign. In fact, Hammock stated in his deposition that he told Gray that he would not resign and that he did not resign. Moreover, proof that one is "ready, willing and able to return to his job" is also required to establish a claim of constructive discharge. See Consolidated Stores, Inc.v. Gargis, 686 So.2d at 274.
Viewing the facts in light most favorable to Hammock, we find that Ryder presented substantial evidence making a prima facie showing that there were no genuine issues of material fact, and we find that Hammock presented no substantial evidence to rebut that showing. Thus, we must conclude that the trial court properly entered the summary judgment on the claim alleging a retaliatory discharge.
Hammock also argues that the trial court erred in entering the summary judgment on his outrage claim. Our Supreme Court first recognized this tort in American Road Service Co. v.Inmon, 394 So.2d 361, 364 (Ala. 1980), in which it stated that "an employer, by virtue of his position, possesses no roving license to treat his employee in an extreme and outrageous manner, whether before, during, or after their relationship." Thus, the court held that "one who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability" and that "the emotional distress thereunder must be so severe that no reasonable person could be expected to endure it. . . . By extreme we refer to conduct so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society." Id. at 365 (citations omitted).
Hammock claims that the light-duty position, in itself, was harassing and outrageous. Hammock complains that the telephone never rang and that he was advised that reading a book while at work was "not a good idea." Hammock claims that he basically had to just sit in the lounge for 6 hours. Further, Hammock argues that he was switched from his usual shift of 8:00 a.m. through 4:00 p.m. to the night shift of 10:00 p.m. through 6:00 a.m. and that Hammock's first paycheck from the new position was for only $1. It is undisputed that Ryder had deducted Hammock's past-due medical premiums from the check. After Hammock complained of the low paycheck, Ryder made smaller deductions from his checks to cover the remaining past-due medical premiums.
Hammock claims that he was harassed. He alleges that a Ryder supervisor came to his home and told him to report to work and that he went to work and was left standing in the middle of the plant for an hour and then he was told to go home. Hammock argues that Ryder's eliminating the light-duty position and its attempting to settle his workers' compensation claim in return for his resignation further support his outrage claim.
"Mere insults, indignities, threats, annoyances, petty oppression, or other trivialities" will not support a finding of the tort of outrage. Id. at 365. There is no precise formula for what conduct will be deemed "beyond all possible bounds of decency," "atrocious," and "utterly intolerable in a civilized society." Id.
After reviewing the record, we find the evidence not sufficient to support an outrage claim. Hammock's allegations do not support a finding of the tort of outrage; we conclude that Ryder's alleged conduct did not exceed the bounds of decency established by civilized society. Therefore, the trial *Page 219 
court properly entered the summary judgment as to the outrage claim.
The summary judgment is affirmed.
AFFIRMED.
YATES, CRAWLEY, and THOMPSON, JJ., concur.
ROBERTSON, P.J., dissents.