757 So.2d 1163 (2000)
William M. BLEIER
v.
WELLINGTON SEARS COMPANY.
1971121.
Supreme Court of Alabama.
January 21, 2000.
*1165 Timothy L. Dillard, Stevan K. Goozée, and Lawrence T. King of Dillard, Goozée & King, Birmingham, for appellant.
Charles A. Powell III, David W. Proctor, and J. Trent Scofield of Johnston, Barton, Proctor & Powell, L.L.P., Birmingham; and Stephen E. Brown of Maynard, Cooper & Gale, P.C., Birmingham, for appellee.
LYONS, Justice.
William M. Bleier appeals from a summary judgment entered in favor of Wellington Sears Company, a corporation, on Bleier's claim alleging a retaliatory discharge. We reverse and remand.
Wellington Sears is a textile manufacturer. Bleier is a former employee of Wellington Sears. On December 4, 1995, while working at Wellington Sears's mill at Shawmut, Bleier injured his back when he slipped and fell on a wet floor. He sought treatment from the company nurse, Linda Yates, who gave him some medication and made an appointment for him on December 18, 1995, with the company doctor, Dr. B.F. Thomas. Bleier continued to perform his regular duties at the Shawmut mill after receiving the injury. In mid-January 1996, Bleier met to discuss his accident with Yates; his supervisor, Olin Anglin; and Wellington Sears's human-resources manager, David Wilkerson. At that meeting, Bleier requested a second medical opinion. Wellington Sears made an appointment for him with one of Dr. Thomas's partners, Dr. David Scott. Thereafter, Wellington Sears transferred Bleier to a light-duty position at its Langdale mill, where Bleier performed primarily clerical tasks.
Bleier says that on January 30, 1996, he left work early because of back pain. He then did not report to work for three consecutive days. On February 5, 1996, Wellington Sears terminated Bleier's employment. In a letter dated February 19, 1996, Wellington Sears advised Bleier that he had been discharged for failure to report to work or to give proper notice for three consecutive daysJanuary 31, February 1, and February 2, 1996.
Bleier contends that on the afternoon of January 30, when he told Yates he was in pain and needed to go home, he also told her that if he continued to be in pain he would not come to work on January 31. On the morning of February 1, Bleier went to the Shawmut mill to pick up his paycheck. While he was there, he says, he spoke briefly with Anglin about his accident and told him he had an appointment that afternoon with Dr. Scott. Bleier reported to Dr. Scott's office on the afternoon *1166 of February 1, but did not see the doctor. Instead, he obtained copies of his medical records. Bleier testified that, because he was not satisfied with his medical progress, he made an appointment for February 2 with a doctor at the Hughston Clinic, a medical facility specializing in orthopedics, where he said he spent the entire day of February 2. Bleier stated that on February 5 he telephoned Wellington Sears to tell Yates and Wilkerson about his visit to the Hughston Clinic. At that time, he said, Wilkerson told him he was being discharged for failing to report his absences in accordance with company policy. Wellington Sears insists that even if Bleier made these contacts, he still failed to comply with the proper procedures for reporting absences from work.
On March 21, 1996, Bleier sued Wellington Sears, seeking workers' compensation benefits and alleging that Wellington Sears had fired him in retaliation for having filed a workers' compensation claim. The retaliatory-discharge claim was made pursuant to § 25-5-11.1, Ala.Code 1975.[1] The trial court severed Bleier's two claims; Bleier and Wellington Sears later settled the workers' compensation claim. Pursuant to their settlement agreement, Wellington Sears paid Bleier a lump-sum settlement of $35,000, the approximate equivalent of a 50% permanent vocational disability.
Upon completion of discovery, Wellington Sears moved, pursuant to Rule 56(c), Ala. R. Civ. P., for a summary judgment as to Bleier's retaliatory-discharge claim. In its motion, Wellington Sears asserted that Bleier was precluded from a recovery under § 25-5-11.1 because, it said, Bleier was not "willing and able" to return to work. The Court of Civil Appeals has stated that an employee's being willing and able to return to work is an essential element that must be proved in order to recover under the retaliatory-discharge statute. See Consolidated Stores, Inc. v. Gargis, 686 So.2d 268 (Ala.Civ.App.), cert. denied, 686 So.2d 278 (Ala.1996), and its progeny. Wellington Sears also argued in its motion that even if Bleier's retaliatory-discharge claim was not precluded by his failure to satisfy the "willing and able" requirement, it had produced substantial evidence indicating that it had discharged Bleier for a legitimate reason that was not merely pretextual.
The trial court entered a summary judgment in favor of Wellington Sears, based on a conclusion that Bleier could not satisfy the "willing and able" requirement of proof. In its order, the trial court set forth the following facts:
"The record evidence is undisputed that [Bleier] cannot satisfy the `willing and able' prong of a prima facie workers' compensation retaliatory discharge case. [Bleier] repeatedly testified in his deposition that, since January 30, 1996 (his last day of work), he has been and currently is physically unable to work.... Further, the [Judgment] and Order Approving Settlement of [Bleier's] workers' compensation benefits claim, entered June 17, 1997, states that [Bleier] is receiving a lump sum settlement of $35,000 (the equivalent of a 50% permanent vocational disability) and states that, `[a]ccording to [Bleier], he is unable to return to work with [Wellington Sears] or to similar, gainful employment. Likewise, a functional capacities evaluation of February 27-28, 1997, indicates that [Bleier] is severely limited with regard to both his upper extremities and lower extremities functions and in numerous other physical, functional aspects.' Finally, this Court notes that [Bleier] has twice been offered re-employment *1167 with [Wellington Sears], but has declined on both occasions."
As noted by the trial court, Bleier testified in his deposition that since January 30, 1996 (his last day of work), he has beenand he says he currently isphysically unable to work. In other words, Bleier has neither worked nor attempted to work since January 30, 1996, six days before Wellington Sears fired him. In his deposition, Bleier described his condition:
"Well, sir, I don't feel like doing nothing to tell you the truth. I don't feel that I'm able to do nothing. I don't feel like doing nothing. I don't have the desire to do nothing. And I don't foresee right now in the near future doing anything. I'm just [not] physically ableI don't have the state of mind, I don't believe I'm physically capable. It's hard for me sometimes even just to sit up sometimes."
Bleier, however, points to another part of his deposition testimony where he stated that between February 5, 1996, and September 4, 1996, he was physically able to do work "to a certain extent."
Bleier contends that the requirement that an employee show that he or she is "willing and able" to return to work as an element of a retaliatory-discharge claim is an unwarranted and unconstitutional extension of § 25-5-11.1. Bleier maintains that if the relevant moment of inquiry is limited to the point at which the employee was discharged, as he contends it should be, then any evidence of his condition after Wellington Sears discharged him should not be considered on the question whether he had presented sufficient evidence to create a prima facie case. Otherwise, he argues, the application of the "willing-and-able" doctrine creates a potential for great unfairness in the case of an injured employee who is discharged at a point when he or she is not yet "willing and able" to return to work but is, at that point, only temporarily disabled. Bleier also contends that Wellington Sears's stated reason for discharging him was not true, but was merely a pretext for otherwise impermissible action. Specifically, he maintains that a representative of Wellington Sears admitted to him that the company had violated § 25-5-11.1 when it discharged him.
When reviewing the disposition of a motion for a summary judgment, this Court applies the same standard of review as the trial court "in determining whether the evidence before the court made out a genuine issue of material fact." Bussey v. John Deere Co., 531 So.2d 860, 862 (Ala. 1988). When a party moving for a summary judgment makes a prima facie showing that there is no genuine issue of material fact and that the movant is entitled to a judgment as a matter of law, the burden shifts to the nonmovant to present substantial evidence creating a genuine issue of material fact.[2]Bass v. SouthTrust Bank of Baldwin County, 538 So.2d 794 (Ala.1989). "Substantial evidence" is defined as "evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala.1989).
Under Alabama law, an employment contract is terminable at will by either partyfor a good reason, a wrong reason, or no reason at all. Culbreth v. Woodham Plumbing Co., 599 So.2d 1120 (Ala.1992). Because of this rule, which dates back to Howard v. East Tennessee V. & G. Ry., 91 Ala. 268, 8 So. 868 (1891), this Court refused to recognize a commonlaw remedy for a retaliatory discharge occurring as a result of an employee's filing a claim for workers' compensation benefits. *1168 Meeks v. Opp Cotton Mills, Inc., 459 So.2d 814 (Ala.1984). In order to ameliorate the effect of the employment-at-will doctrine in the context of an employee discharged for filing a claim for workers' compensation benefits, the Legislature in 1984 enacted § 25-5-11.1, Ala.Code 1975. Section 25-5-11.1 states that "[n]o employee shall be terminated by an employer solely because the employee has instituted or maintained any action against the employer to recover workers' compensation benefits." See Twilley v. Daubert Coated Products, Inc., 536 So.2d 1364 (Ala.1988).
The requirement that the employee be "willing and able" to return to work first appeared in 1996 in Gargis, 686 So.2d at 273.[3] In so holding, the Court of Civil Appeals sought to conform the Alabama retaliatory-discharge statute to federal anti-discrimination statutes, most of which recognize an employee's willingness and ability to return to work as a prerequisite to a recovery of damages for termination. Gargis, 686 So.2d at 273, citing Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 253, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981) ("plaintiff must prove by a preponderance of the evidence that she applied for an available position for which she was qualified ... under Title VII"); Southeastern Community College v. Davis, 442 U.S. 397, 406, 99 S.Ct. 2361, 60 L.Ed.2d 980 (1979) ("An otherwise qualified person [under the Rehabilitation Act] is one who is able to meet all of a program's requirements in spite of his handicap."); McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) (plaintiff must show he applied and was an otherwise qualified handicapped person in order to prove a Title VII claim); Pushkin v. Regents of the University of Colorado, 658 F.2d 1372, 1387 (10th Cir.1981) (plaintiff must show that he was an otherwise qualified person, apart from his handicap); and Parham v. Carrier Corp., 9 F.3d 383 (5th Cir.1993) (court held that the plaintiff had failed to establish a "causal nexus" between his filing of a workers' compensation claim and his discharge by his employerbased in part on the fact that the overwhelming evidence showed that he was physically unable to work).
Against the bare-bones framework of § 25-5-11.1, creating a remedy for a retaliatory discharge, the courts of this state have been required to flesh out the elements of this relatively new cause of action. One of the fundamental rules of statutory construction is that a court is to determine and give effect to the Legislature's intent in enacting a statute. Norfolk S. Ry. Co. v. Johnson, 740 So.2d 392 (Ala.1999). In construing acts of the Legislature, we ascertain its intent from the language used in the statute itself, if possible, as well as from the reason and necessity for the act and the goals the Legislature sought to accomplish. McGuire Oil Co. v. Mapco, Inc., 612 So.2d 417 (Ala.1992); Advertiser Co. v. Hobbie, 474 So.2d 93 (Ala. 1985). If the statute is ambiguous, then we "may consider conditions that might arise under the provisions of the statute and examine results that would flow from giving the language in question one particular meaning rather than another." Norfolk S. Ry. Co., 740 So.2d at 396. Section 25-5-11.1 prohibits an employee's discharge "solely because the employee has instituted or maintained [an] action" seeking workers' compensation benefits. In Twilley, 536 So.2d at 1364, this Court held that the term "solely," as used in the retaliatory-discharge statute, was intended to give the statute remedial effect. Because *1169 the statute is remedial legislation, we must construe § 25-5-11.1 liberally in order to effectuate its beneficent purposes. Id.
Section 25-5-11.1 was signed into law by the Governor just four months after this Court had decided Meeks, wherein this Court declined to fashion a common-law remedy for retaliatory discharge. Hence, we can presume that when the Legislature enacted § 25-5-11.1, it was well aware of the existing law permitting an employer to discharge an at-will employee either with or without cause. Blue Cross & Blue Shield of Alabama, Inc. v. Nielsen, 714 So.2d 293 (Ala.1998); Hamm v. Harrigan, 278 Ala. 372, 178 So.2d 529, reh'g stricken, 278 Ala. 521, 179 So.2d 154 (1965), cert. denied, 382 U.S. 981, 86 S.Ct. 555, 15 L.Ed.2d 471 (1966). We must construe § 25-5-11.1 in a manner that effectuates the obvious legislative intent to protect an employee from a retaliatory discharge based solely on the employee's filing a workers' compensation claim. However, at the same time, we must refrain from construing § 25-5-11.1 in a manner that revises the at-will doctrine beyond the extent necessary to accommodate the obvious legislative purpose.
Although we agree with the Court of Civil Appeals that whether an employee is "willing and able" to work is an appropriate inquiry in a retaliatory-discharge case, we must recognize that striking a delicate balance is a difficult task. In attempting to strike that balance, we conclude, with the benefit of experience flowing from the Court of Civil Appeals' decision in Gargis in 1996, that the appropriate place to consider that inquiry should be somewhere besides the context of the employee's prima facie case. Our decision is informed by a review of the manner in which other courts dealing with a retaliatory-discharge action treat the question of an employee's willingness and ability to return to work.[4]
Recently, in Johnson v. Cargill, Inc., 984 S.W.2d 233 (Tenn.App.1998), the Tennessee Court of Appeals, in a retaliatory-discharge action, considered the relevance of an employee's physical condition; that court used the employee's disability as the basis for reversing a judgment for the employee. In applying Tennessee's common-law cause of action for a retaliatory discharge based on the employee's filing a workers' compensation claim, the court stated:
"The elements of such a claim are: (1) The plaintiff was an employee of the defendant at the time of the injury; (2) the plaintiff made a claim against the defendant for workers' compensation benefits; (3) the defendant terminated the plaintiff's employment; and (4) the claim for workers' compensation benefits was a substantial factor in the employer's motivation to terminate the employee's employment. The plaintiff bears the burden of proof on these elements, `including a causal relationship between the claim for workers' compensation benefits and the termination of employment.' If the plaintiff makes a prima facie case of retaliation, the defendant bears the burden `of proving a legitimate nonpretextual nonretaliatory reason for the discharge.' This reason may involve the employee's shortcomings, such as `unexplained tardiness, excessive absenteeism, lying as to previous compensation claims, or physical inability to do the job.'"

984 S.W.2d at 234 (emphasis added; citations omitted) (quoting Anderson v. Standard Register Co., 857 S.W.2d 555, 558-59 (Tenn.1993)). In Johnson v. Cargill, the employee sought to overcome the evidence of his disability by showing a discriminatory *1170 refusal to make him eligible for a "light-duty" policy under which injured employees were either given lighter duties or were helped with their usual duties until they could return to their regular work. However, the court reviewed the evidence regarding the treatment other employees had received and concluded that it did not substantiate the employee's claim of discrimination.
In Elzey v. Forrest, 739 P.2d 999 (Okla. 1987), the Oklahoma Supreme Court, interpreting a statute creating a remedy for retaliatory discharge, reached a similar conclusion regarding how to deal with the employee's inability to perform.[5] In dealing with the same issue here presented, the Oklahoma court stated:

"We do not accept the premise inherent in appellee's argument that proof of physical ability must be a part of a plaintiffs prima facie case in a retaliatory discharge action. The premise entailed is that a discharge of one physically unable to perform his job duties is protected from the application of the retaliatory discharge provisions even though it might be established that a significant motivating factor behind the discharge of a temporarily disabled employee was the employee's filing for worker's compensation benefits. We find that, to give full effect to the Legislature's intent to protect employees who seek the benefits conferred under Oklahoma's Workers' Compensation Act, once a plaintiff in a retaliatory discharge action has presented evidence establishing that a significant factor in his termination was retaliation for one or more of the activities expressly protected under 85 O.S.1981 § 5, a prima facie case of retaliatory discharge has been established. The burden then shifts to the employer to establish that the discharge was for a legitimate reason. The employer may then offer proof that the primary motivation for discharging the employee was the employee's inability to perform his assigned duties or that the employee had pursued a worker's compensation claim in bad faith."
739 P.2d at 1002-03 (emphasis added; footnotes omitted). The Oklahoma court thus rejected the argument that proof of physical ability is a part of the employee's prima facie case, notwithstanding that the Oklahoma statute expressly protected the employer's right to refuse to rehire or retain any employee who was physically unable to perform his assigned duties.
In Cardwell v. American Linen Supply, 843 P.2d 596 (Wyo.1992), the Supreme Court of Wyoming affirmed a summary judgment for the employer in a retaliatory-discharge action. The employer, after having attempted for over a year to accommodate the employee's medical problems, discharged the employee because she was no longer physically able to perform her job. The court stated:
"`There is a distinction between a termination for the exercise by the worker of his rights under the worker's compensation law and a termination for inability to do the work, even if such inability is caused by an accident requiring the exercise of worker's compensation rights. The disability and partial disability benefits of the worker's compensation law are in recognition of this distinction.'"
843 P.2d at 599 (quoting Lankford v. True Ranches, Inc., 822 P.2d 868, 872 (Wyo. 1991)). Then, in an effort to flesh out the elements of Wyoming's common-law cause of action for retaliatory discharge, the Wyoming *1171 court adopted a discussion of the order and burdens of proof established by the Oklahoma Supreme Court in its retaliatory-discharge cases:
"`The discharged employee must show employment, on the job injury, receipt of treatment under circumstances which put the employer on notice that treatment had been rendered for a workrelated injury, or that the employee in good faith instituted, or caused to be instituted, proceedings under the [Wyoming Worker's Compensation] Act, and consequent termination of employment. After a prima facie case is established, the burden then appropriately shifts to the employer to rebut the inference that its motives were retaliatory by articulating that the discharge was for a legitimate non-retaliatory reason.... Two of these reasons include the employee's inability to perform the assigned duties, or the bad faith pursuit of a compensation claim....
"`... Placing this burden of production on the employer serves two purposesit meets the plaintiff's prima facie case by presenting a legitimate reason for the action, and it frames the factual issue with sufficient clarity to provide the worker with a full and fair opportunity to demonstrate that the reason offered by the employer for terminating the employee was not the true reason for the employment decision but was, rather, a pretext.'"
843 P.2d at 599-600 (emphasis added) (ellipses and interpolation in Cardwell) (quoting Buckner v. General Motors Corp., 760 P.2d 803, 806-07 (Okla.1988)).
We conclude that the "willing-and-able" doctrine is relevant in a retaliatory-discharge claim brought pursuant to § 25-5-11.1. To hold otherwise would give an excessively broad effect to the Legislature's retaliatory-discharge exception to the employment-at-will doctrine. However, to accommodate the continued relevance of an employee's willingness and ability to work by embedding the "willing-and-able" requirement into the elements of the plaintiff's prima facie case of retaliatory discharge would exclude a substantial class of employees from the protection of the remedy provided by § 25-5-11.1. We cannot conclude that the Legislature intended to exclude that class from the remedy, in the absence of specific direction. For that reason, we decline to follow the precedent taken from the federal statutory remedies relied upon in Gargis.[6] See Pierce v. Franklin Elec. Co., 737 P.2d 921, 925 (Okla.1987) (exclusion of disabled employee from shield against retaliatory discharge would severely undermine objective of Oklahoma's statutory scheme).
We hold, therefore, that the "willing-and-able" doctrine does not establish an element of an employee's prima facie case, but that the question whether an employee is willing and able to return to work is relevant to the defendant's opportunity to establish a defense to a claim alleging retaliatory discharge or to eliminate or reduce the damages recoverable for lost wages. To the extent they hold otherwise, the following cases are overruled: Gordon v. J.B. Hunt Transport, Inc., 744 So.2d 942 (Ala.Civ.App.1999); Chapman v. Boise Cascade Corp., 726 So.2d 729 (Ala.Civ.App. 1999); Hammock v. Ryder Dedicated Logistics, Inc., 716 So.2d 215 (Ala.Civ.App. 1998); Alexander v. Pace Indus., Inc., 710 So.2d 450 (Ala.Civ.App.1997); Rice v. Bruno's, Inc., 705 So.2d 486 (Ala.Civ.App. 1997); Watwood v. White Consol. Indus., Inc., 699 So.2d 210 (Ala.Civ.App.1997); Lambert v. Beverly Enterprises, Inc., 695 So.2d 44 (Ala.Civ.App.1997); and Consolidated Stores, Inc. v. Gargis, 686 So.2d 268 (Ala.Civ.App.), cert. denied, 686 So.2d 278 (Ala.1996).
*1172 The decisions we have cited from Oklahoma, Wyoming, and Tennessee, dealing with the issue of a remedy for a retaliatory discharge and the question of an employee's ability to perform, are highly persuasive.[7] We emphasize that evidence underlying the "willing-and-able" doctrine remains quite relevant to an employer's defense against an action alleging a retaliatory discharge.[8] The Legislature enacted § 25-5-11.1 to remedy the hardship caused when an employer retaliates against an employee who was injured in the line and scope of his or her employment and sought to recover workers' compensation benefits.
The Court of Civil Appeals is quite correct in observing that the statute does not require an employer to create a job specifically designed for an injured employee and does not require an employer to provide the employee with special accommodations to allow the employee to perform a job. Had the Legislature intended to place those requirements upon employers, it could have specified that intent by the statute that created the cause of action for retaliatory discharge. Some employers are able to create light-duty work or can make accommodations to assist an injured employee; they are to be commended for their efforts. Nevertheless, when the law does not require an employer to create a job or to provide special accommodations, the employer cannot be penalized for failing to do so and, instead, discharging an employee who is not able to perform the duties of his job, so long as the discharge is not based on the employee's filing a workers' compensation claim.[9] See Hammock, 716 So.2d at 218; Rice, 705 So.2d at 488; Lambert, 695 So.2d at 47. Should an employer consider the scope of the remedy provided a discharged employee to be too expansive, it should direct its efforts toward the Legislature, the source of the remedy we are required to implement.
The "willing-and-able" doctrine also is relevant to a discharged employee's claim for damages. Although § 25-5-11.1 makes no specific reference to damages, this Court has determined that under that statute damages can be awarded in accordance with the general law of torts. See Caraway v. Franklin Ferguson Mfg. Co., 507 So.2d 925 (Ala.1987). An employee who is discharged solely for filing a workers' compensation claim, but who is either unwilling[10] or unable to return to work, cannot recover damages for lost wages. However, that employee would be able to recover damages for any loss or harm, other than lost wages, that arose before he became unwilling or unable to work, such as lost benefits and/or mental anguish. *1173 See Motion Industries, Inc. v. Pate, 678 So.2d 724 (Ala.1996) (holding that an employee discharged in violation of § 25-5-11.1 can recover mental-anguish damages if the claim for such damages is supported by the record). An employee also may be able to recover punitive damages. See Continental Eagle Corp. v. Mokrzycki, 611 So.2d 313 (Ala.1992). Of course, an employee who can prove that he or she was willing and able to work, but nevertheless was discharged for seeking workers' compensation benefits, may recover the wages lost as a result of the retaliatory discharge.
Wellington Sears's alternative basis for an affirmance is grounded upon its contention that even if Bleier made all of the contacts he claims justified his absence from work, he nonetheless violated company rules establishing the proper procedures for reporting absence from work. Bleier offered evidence indicating that a Wellington Sears representative had admitted that the company violated the provisions of § 25-5-11.1 when it discharged him. That evidence is sufficient to establish a prima facie case of retaliatory discharge and to defeat Wellington Sears's motion for summary judgment.
We reverse the summary judgment in favor of Wellington Sears and remand the cause for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
MADDOX, HOUSTON, COOK, and SEE, JJ., concur.
JOHNSTONE, J.,[*] concurs specially.
BROWN, J., concurs in the result.
JOHNSTONE, Justice (concurring specially).
I concur, but with the qualification that the defense that the employee was discharged for unwillingness or inability to do the job will not be recognized unless, at the time of discharge, either (1) the employee was able but was unwilling to do the job or (2) the employee had reached maximum medical improvement. For example, the employer will not be allowed to contend that its reason for discharging the employee was that he was recuperating in the hospital from his on-the-job injury and thus was unable or unwilling to do the job.
NOTES
[1] We note that in his complaint Bleier named additional defendants and stated an additional claim alleging intentional interference with business/contractual relations. The additional defendants and claim, however, are not involved in this appeal. The trial court dismissed the other defendants and entered a summary judgment in favor of the defendants on Bleier's claim alleging intentional interference with business/contractual relations.
[2] We note that this present case was pending in this Court at the time this Court decided Ex parte General Motors Corp., [Ms. 1971318, Sept. 24, 1999] ___ So.2d ___ (Ala.1999). The summary-judgment standard established in Ex parte General Motors is to be applied prospectively only.
[3] The Court of Civil Appeals has consistently followed the "willing-and-able" doctrine announced in Gargis. See, e.g., Gordon v. J.B. Hunt Transport, Inc., 744 So.2d 942 (Ala.Civ. App.1999); Chapman v. Boise Cascade Corp., 726 So.2d 729 (Ala.Civ.App.1999); Hammock v. Ryder Dedicated Logistics, Inc., 716 So.2d 215 (Ala.Civ.App.1998); Alexander v. Pace Indus., Inc., 710 So.2d 450 (Ala.Civ.App.1997); Rice v. Bruno's, Inc., 705 So.2d 486 (Ala.Civ. App.1997); Watwood v. White Consol. Indus., Inc., 699 So.2d 210 (Ala.Civ.App.1997); Lambert v. Beverly Enterprises, Inc., 695 So.2d 44 (Ala.Civ.App.1997).
[4] We note that most jurisdictions have addressed the issues inherent in retaliatory-discharge claims by statute or by judicial decisions. See 6 Arthur Larson, The Law of Workmen's Compensation § 68.36 (1999); Theresa Ludwig Kruk, Annotation, Recovery for Discharge from Employment in Retaliation for Filing Workers' Compensation Claim, 32 A.L.R.4th 1221 (1984); Thomas J. Goger, Annotation, Workmen's Compensation: Recovery for Discharge in Retaliation for Filing Claim, 63 A.L.R.3d 979 (1975).
[5] 85 O.S.1981 § 5 provided as follows:

"No person, firm, partnership or corporation may discharge any employee because the employee has in good faith filed a claim, or has retained a lawyer to represent him in said claim, instituted or caused to be instituted, in good faith, any proceeding under the provisions of Title 85 of the Oklahoma Statutes, or has testified or is about to testify in any such proceeding. Provided no employer shall be required to rehire or retain any employee who is determined physically unable to perform his assigned duties."
(As quoted in Elzey, 739 P.2d at 1001.)
[6] Although this Court referred to the "willing-and-able" doctrine in Twilley, 536 So.2d at 1365, and Culbreth, 599 So.2d at 1122, as one of the ways in which an employee might prove a retaliatory discharge, we did not establish as a prerequisite to a prima facie case that the employee must prove that he or she was willing and able to return to work.
[7] We note that the difference between the law in these other jurisdictions and Alabama law is that in Tennessee, Oklahoma, and Wyoming, the employee must prove that the employee's seeking workers' compensation benefits was a substantial factor in the decision to discharge the employee, whereas in Alabama, the employee must prove that seeking workers' compensation benefits was the sole factor in the employer's decision to discharge the employee. We do not consider this difference to be determinative of the question before uswhether proof that the employee is "willing and able" should be a component of a prima facie case under § 25-5-11.1.
[8] Where the employee's willingness or ability to return to work is in dispute, it is a question to be decided by the trier of fact. Dunlop Tire Corp. v. Allen, 725 So.2d 960 (Ala.1998).
[9] If an employer discharges an employee who has been injured, and does so at a time when the employer could not know the employee's ultimate status, that fact would weigh against any assertion that the employee's inability to perform was the basis of the decision. A later determination of disability for purposes of a claim for Social Security benefits could be relevant to the issue of damages, but would not preclude the employee from establishing a prima facie case. See McCrary v. REF Alabama, Inc., 757 So.2d 421 (Ala.2000).
[10] We recognize that the decisions from Tennessee, Oklahoma, and Wyoming focus on an employee's inability to perform, but we see no reason to think they would be decided differently in the context of an employee's unwillingness to perform.
[*] Although Justice Johnstone did not sit at oral argument of this case, he has listened to the tape of oral argument.